THOMPSON, J.
 

 The defendant was sentenced in the district court of Caddo parish to, pay a fine of $1,000 and to be imprisoned in the parish jail for six months, with six months additional for failure to pay the fine.
 

 The particular charge on which he was convicted is that he had as dealer and agent sold within the parish of Caddo 100 profit-sharing contract certificates of the Security Industrial Life Insurance Company of New Orleans, being a domestic investment company, as defined by Act No. 177 of 1920, without first having registered with, and obtained from, the Louisiana Securities Commission a license or permit as required by said act, and without first filing with the said Securities Commission the statement required by section 9 of said statute.
 

 There was no objection made and no bill reserved prior to trial and conviction, and no motion was filed for a new trial. All matters of complaint are set out in a motion and supplemental motion in arrest of judgment.
 

 These involve an attack upon the constitutionality and legality of the act under which defendant is charged and a challenge of the right of the district attorney to amend the indictment which was returned by the grand jury.
 

 Act No. 177 of 1920 is entitled an act to prevent fraud in the sale of certain securities, and providing for supervision and regulation of certain securities defined in the act, and
 
 *631
 
 providing penalties for the violation of the act.
 

 The first section of the act creates a commission to be known as the Louisiana Securities Commission, charged with the duty of administering and enforcing the provisions of the act. The commission is composed of the secretary of state, the examiner of state banks, and the Attorney General, with offices in the courthouse in the city of New Orleans.
 

 The second section provides for a secretary to the commission, and the third section defines what shall be a domestic investment company and what shall constitute a foreign investment company within the meaning of the act.
 

 Section 4 provides that any foreign or domestic investment company which shall by advertisement or otherwise engage in the business of selling, or offering for sale, any stocks, bonds, or other securities, shall be deemed a regular dealer within the meaning of the act, and it further provides that no dealer within the meaning of the act shall sell, or offer for sale, any securities, or engage in the business of offering for sale such securities, unless or until he shall have first registered with the commission, and shall have furnished such information to the commission as described therein.
 

 It is further provided in said section 4 that all authorized agents of any dealer or investment company shall be registered with the commission, and no agent shall act as such until he shall have filed with the commission a signed and acknowledged certificate of registration and acceptance of agency upon forms to be furnished by the commission.
 

 It is further provided that no dealer or agent shall be authorized to perform any of the things named in the act until he shall have been duly registered and had issued to him a license or permit.
 

 In section 5 it is provided that each agent shall renew his registration each year.
 

 It is provided in section 8 that, when the commission has issued a license to a dealer or investment house, such dealer or investment house shall without further special authority from the commission deal in any of the classes of securities named in said section.
 

 Section 9 provides that, before selling, offering for sale, taking subscriptions for, or negotiating in this state, any stocks, bonds,' or other securities not included in the exemptions of section 8, the dealer shall file in the office of the commission a statement giving the information as therein outlined.
 

 Section 13 provides that any issuer of securities, or any officer, director, trustee, or agent thereof, or any dealer selling, or offering to sell, any securities without full compliance with the provisions of this act, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not exceeding $5,000 for the first offense and not to exceed $25,000 for the second or any subsequent offense, and the officer, director, or agent thereof, or the issuer (if a natural person), may be punished by imprisonment in the parish jail not exceeding one year, or may be punished by both fine and imprisonment in the discretion of the court.
 

 The sécond paragraph of the penal clause further provides that any person or corporation, whether acting on his or its own behalf, or on behalf of another violating any of the provisions of this act, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than $100 nor more than $500 for the first offense, and not less than $500 nor more than $1,000 for the second or any subsequent offense, or imprisoned in the parish jail not more than six months for the first offense, and not more than one
 
 *633
 
 year for tlie second or any subsequent offense, or shall be subject to both fine and imprisonment in the discretion of the court.
 

 We have mentioned the salient provisions of the statute somewhat at length because of the contention of counsel, which we shall discuss later, to the effect that the language of the act is so ambiguous, confusing and uncertain as to render the statute as a whole impossible of application or enforcement.
 

 The first question to be considered is, Does the statute violate articles 319 and 320 of the Constitution of 1898?
 

 Article 319 declares that the electors of the city of New Orleans, and of any political corporation which may be established within the territory now, or which may hereafter be embraced within the corporate limits of said city, shall have the right to choose the public officers, who shall be charged with the exercise of the police power and with the administration of the affairs of said corporation in whole or in part.
 

 Article 320 declares that the preceding article shall not apply to the board of liquidation of the city debt, nor construed as prohibiting the establishment of board of commissioners, the members of which are elected by the council or appointed by the mayor with the consent of the council.
 

 As to all other existing boards or commissioners affected by it, said article was to take effect from and after the first municipal election which shall be held after the adoption of the Constitution.
 

 It was provided that nothing therein contained should be so construed as to prevent the Legislature from creating boards or commissioners, whose powers shall extend in and beyond the parish of Orleans, or as affecting present boards of that character, or the board of directors of the public schools, and provided further that hereafter, in creating any board with such powers, or filling vacancies therein, at least two-thirds of the members thereof shall be from the city of New Orleans, and elected by the people or council thereof, or appointed by the mayor as herein-above provided.
 

 It is to be observed that the two articles conclude the chapter of the Constitution which deals exclusively with the affairs of the city of New Orleans. There is nothing in the entire chapter which has any reference whatever to matters relating to the state at large, unless it can be found in the last proviso of article 320.
 

 We find nothing in the statute under consideration which contravenes in any manner the first mentioned article.
 

 That article simply provides that the electors of the city, and of any political corporation embraced within the city limits, shall have the right to choose the public officers, who shall be charged with the exercise of the police power and with the administration of the affairs of the city or of any political corporation within the city. There is obviously nothing in the language of the article which can be construed as vesting in the officers so elected the sole and exclusive authority to exercise police power which does not appertain to the city alone, but which affects and concerns the state at large, including the city of New Orleans.
 

 Article 263 of the Constitution of 1898, which was in force when Act No. 177 of 1920 was passed, declares that the exercise of the police power of the state shall never be abridged nor so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of the individuals or the general well-being of the state.
 

 We take this provision of the Constitution as referring to public corporations and mu
 
 *635
 
 nicipalities as well as-.to private corporations, • and, when considered in connection with article 319 of the same Constitution, it must be held that it was not intended by the last article to so abridge, modify, or destroy, or to take away from the law-making power of the state, one of the state’s inherent and fundamental attributes of sovereignty, and vest it exclusively in the city of New Orleans in so far as to infringe the equal rights of individuals and the general well-being of the entire state.
 

 If there is any conflict between the statute and article 320 of the Constitution, •it must be found, as already stated, in the -last and concluding proviso of the article which declares that the city shall have two-thirds of the membership of all boards or commissions created by the Legislature affecting the city.
 

 From this it is argued that no board or commission which takes the city of New Orleans within its- supervision and control can be created by the Legislature, unless two-thirds of its members are citizens of New Orleans, and who are to be selected as in said article provided.
 

 We are not of opinion that the language used demands and requires such a construction.
 

 A careful reading and study of the entire context of the article will, we think, convince a fair and impartial mind that the Constitutional Convention was considering matters pertaining to the city alone and boards and commissions in said city acting for and in behalf of the city and in which the balance of the state had no special or particular concern.
 

 It was therefore to that character of boards and - commissioners administering the affairs of the city to which the article referred, although such boards in some instances possessed some powers extending outside the city.
 

 It mus^ be remembered as already noted that the entire chapter, comprising some twelve articles, some very lengthy and having several paragraphs, deals exclusively with matters pertaining to the city and in which the balance of the state had no specific interest.
 

 It would appear strange indeed that in a very few words, and at the very close of the last paragraph of the last article of the chapter, that the convention would have declared that all police power of the state affecting the city of New Orleans as well as the state at large should be reserved to be exercised by the city, and that no board or commission, although state-wide, should have any jurisdiction over the affairs of the city, unless two-thirds of the members were accorded to the city to be selected by the city.
 

 We are unable to attribute to the convention the intent to deliberately divorce the city from the balance of the state in all matters of legislation under the police power. of the state which so vitally affect the general welfare and well-being of the city and state alike.
 

 To so hold would be to abridge the police power of the state not intended by article 320, and would be contrary to the letter and spirit of article 263 of the Constitution which we have stated should be construed in connection with article 320 of the same Constitution.
 

 We are referred to the case of the Board of Public Utilities of N. O. v. N. O. Ry. & Light Co., 145 La. 308, 82 So. 280. In that case Act No. 36 of 1916 which created a board of public utilities for the city of New Orleans was declared to be unconstitutional. The board so created was to be composed of the commissioner of public utilities and four other qualified electors to be appointed by the Governor.
 

 The functions of the board were confined to the city of New Orleans, and under the
 
 *637
 
 articles of the Constitution the city was entitled to select the members of the hoard. The decision manifestly has no application to the instant case.
 

 In the case of State v. Lafayette Fire Ins. Co., 134 La. 78, 63 So. 630, the act creating the office of fire marshal was declared to be in violation of articles 319 and 320 of the Constitution of 1898. The basis on which that ruling was made was that the functions of the fire marshal so far as applied to New Orleans were local in character, and their exercise in the city constituted an exercise of the police power of the city. And, such being the case, the statute, said the court, which authorizes an officer appointed by the Governor (not elected by the electors of the city of New Orleans) to exercise them in the city, contravenes said articles 319 and 320 of the Constitution, and is in that respect null and void.
 

 That case can hardly furnish a precedent or guide for the decision of the instant case.
 

 There the functions of the fire marshal, in so far as they applied to New Orleans, were purely local. An inyestigation into the cause •of fire in the city had no connection with fires in the balance of the state, and, vice versa, the duties of the ,fire marshal in the country parishes had nothing to do with his duties in the city.
 

 But in this case the situation is different. The functions of the Securities Commission are not local. They are state-wide, and affect alike the citizens of New Orleans and those of the balance of the state. It would therefore be an anomaly to hold thaA the exercise of the general police power in such matters could be divided between the city and the state. It would present an unthinkable, not ■to say impossible, situation to say that an investment or securities company could put its fictitious and fraudulent stock on the market in the city of New. Orleans and could not be reached by state legislation, while such stocks could not be negotiated in the balance of the state without subjecting the vendor to prosecution and punishment. Yet that is the situation which would be presented if the suggestion of counsel were adopted and such a law was enacted which left the city without its provisions.
 

 The case of Benedict v. City of New Orleans, 115 La. 646, 39 So. 792, and that of Board of Health v. Susslin, 132 La. 669, 61 So. 661, can have no particular bearing, for the reason that the court in both of those eases found .that the legislation was authorized by special provisions of the Constitution.
 

 Our conclusion is that Act No. 177 of 1920 does not contravene articles 319 and 320 of the Constitution of 1898, and does not interfere with the right of the city to elect its own officers charged with administering the affairs of the city and the exercise of the police power within and for the city in matters affecting the city alone.
 

 As for the rest we may say that the statute is not entirely free from ambiguity but we are of the opinion that the charge against the defendant is clearly brought within the prohibited as well as the penal provisions of the statute. The defendant is charged with offering for sale, and with selling profit-sharing contract certificates of the Security Industrial Life Insurance Company of New Orleans, being a domestic investment company as defined in the statute; that he was acting as dealer and agent, and had not filed with the Securities Commission the statement required by section 9 of the statute, and had not registered with, and had not obtained a license or permit from, the commission, as required by the said statute.
 

 The statute provides that no dealer or agent shall be authorized to perform any of the things provided for until he shall have been
 
 *639
 
 duly registered and shall have obtained a license or permit to act as such agent or dealer.
 

 It is provided in section 9 that, before selling, or offering for sale, talcing subscriptions for, or negotiating in this state, any stocks, bonds, or other securities not covered by the exemptions of section S, the dealer shall file with the commission a statement describing such securities, etc, and section 14 declares that it shall be unlawful for any officer, director, solicitor, broker, or agent to sell, or offer for sale, any securities not covered by the exemptions fixed in section 8.
 

 There is no proof in the record to show that the securities the defendant was charged with selling did not belong to (that class prohibited by the statute, and we cannot assume that such securities were within the class exempted by the statute.
 

 The department of insurance attached to the office of secretary of state has no supervision or control over the issuance and floating on the market the capital stock of a corporation whether such corporation be an insurance company or an industrial investment company.
 

 Whether the defendant was a dealer or an agent or both within said act was a question of fact left to the determination of the trial judge. Under the charge as laid in the indictment the defendant under a general plea of not guilty was convicted as charged. We must assume, therefore, that as a matter of fact the trial judge found the defendant guilty of being both an agent and a dealer.
 

 It cannot be properly said that the defendant could not have acted both as dealer and agent, for there is no conflict between the two terms as used in the indictment and in the charge.
 

 As we have seen, no dealer shall sell, ■ or offer for sale, such securities as defined in the prohibited sections of the act without complying with the requirements of the statute, and no agent'shall sell, or offer for Sale, any such securities, unless registered and licensed to do so.
 

 It is immaterial so far as concerns this defendant whether the investment company whose securities he was selling as agent or dealer had complied with the act or not. The defendant was only charged with and was convicted for failing to comply with the terms of the statute required of him personally.
 

 Nor do we think that the penal clauses are confusing or inconsistent.
 

 In the first paragraph of section 13 it is provided that any issuer of securities, or any officer, director, trustee, or agent thereof, or any dealer, selling, or offering to sell, any securities without full compliance with the provisions of the act, shall be deemed guilty of a misdemeanor. This language is broad enough to cover and include an agent of the issuer of securities as well as a dealer in securities so offered or sold.
 

 The second paragraph provides a penalty for any person or corporation whether acting on his or its own behalf or on behalf of another to violate any of the provisions of the act.
 

 There is no inconsistency in the two paragraphs. In one case the penalty is for selling, or offering to sell, securities in violation of the act, and the other is for violation of other provisions of the act. The defendant was charged with and convicted of selling securities, and clearly comes under, and is subject to, the penalty provided in the first paragraph.
 

 The penalty imposed was responsive to the charge under a special provision of the statute, and the defendant could not have been convicted and sentenced for violating any of the other provisions of the statute.
 

 
 *641
 
 The counsel is in' error in the contention that the first paragraph of section 13 does not provide for afiy term of imprisonment.
 

 The language employed is that any officer, director, trustee, or agent thereof, or the issuer (if a natural person), may be punished by imprisonment in the parish jail not exceeding one year, or may be punished by both fine and imprisonment. This language is broad enough to include any officer, director, trustee, or the agent of the issuer, and even the issuer himself, if a natural person.
 

 The indictment negatived the running of prescription, and, as the punishment fixed in the statute included imprisonment, the plea of prescription is not well founded, unless it had been shown that the offense had been made known to a proper officer within the time prescribed.
 

 The original indictment described the securities as capital stock of the Security Industrial Life Insurance Company) and that defendant was acting as dealer, and, after arraignment, but before trial, the district attorney was permitted to amend the indictment by alleging that the securities were profit-sharing certificates of said company, and by adding the words “and Agent.”
 

 There was no objection by the defendant, and the case on application of defendant was continued from June 11th to June 28th.
 

 It was too late after trial and conviction for the defendant to urge that he was not arraigned on the indictment as amended.
 

 Nor did the amendment of the indictment make any material change in the substance of the charge. It was the securities of the Security Industrial Life Insurance Company of New Orleans which the defendant was charged with unlawfully selling, and it can make little difference whether such securities were designated capital stock of the corporation or profit-sharing ■ certificates of the corporation.
 

 The capital 'stock of a corporation represented by certificates is intended to be profit producing for the benefit of the stockholders as much so as profit-sharing certificates of a corporation. So, whether designated .by one name or the other, it was the securities put on the market, by the company that the defendant was charged with selling in violation of the terms of the statute.
 

 The conviction and sentence are affirmed.
 

 O’NIELL, O. J., concurs in the decree.