## CATTERLIN v STATE

Ohio Appeals, 2nd Dist, Greene Co

No 393.   Decided Jan 3, 1934

Frank L. Johnson, Xenia, C. J. Mattern, Dayton, Harry D. Smith, Xenia, and D. W. Iddings, Dayton, for plaintiff in error.

Marcus E. McCallister, Prosecuting Attorney, Xenia, and George H. Smith, Ass't. Prosecuting Attorney, Xenia, for defendant in error.

**412**

## OPINION

By HORNBECK, PJ.

It is the claim of the defense that the verdict of the jury was contrary to law in finding that the sale of the securities in question without a license was prohibited by statute. The charge which was preferred under §8624-25 GC, insofar as pertinent to our inquiry, provides:

"Whoever sells securities or causes the same to be sold or offers the same for sale or causes them to be offered for sale except those securities specified by sub-sections 6 or 8 of section 3 hereof and except when participating in the transactions specified in §4 or in subsections 1, 2, 3, or 4 of §6 hereof, without being licensed by the division; or

"Whoever knowingly and intentionally sells or causes to be sold or offers for sale or causes to be offered for sale in this State any securities which are not exempt under the provisions of §3 of this act nor the subject matter of one of the transactions specified in §4 of this act, unless such securities have been registered by description or qualified, or are the subject matter of a transaction that has been so registered by description."

Sec 8624-3 GC provides:

"The following securities shall be exempt from the provisions of §§8, 9, 10, 13 and 14 hereof, and the requirements therein set forth need not be complied with.

"Securities issued by a person, corporation or association organized not for profit,

including those organized exclusively for religious, educational, social, recreational, athletic, benevolent, fraternal, charitable, reformatory, co-operative marketing purposes, or for conducting a county fair; provided no part of the earnings of such issuer inures to the benefit of any shareholder, member or individual."

It is claimed that the corporation of Harper Heirs was not only organized not for profit but that no part of the earnings of the issuance of the certificates of the corporation inured to the benefit of any shareholder, member or individual. The evidence discloses the sale of these securities by defendant in great numbers. The purpose for which the corporation was organized and the subject matter of the certificates issued would not require determination that any earnings of such issuance should inure to the benefit of any shareholder, member or individual of the corporation. In fact, that would seem to be the normal trend of compliance with the purpose specified in the Articles of Incorporation. However, we are convinced that the jury had the right, upon a fair consideration of all the evidence, to conclude that these ceritficates were sold and purchased with the purpose that they would in the event of the establishment of heirship to the Harper estates, have earnings which would inure to the benefit of shareholders of the corporation.

The record discloses that the certificates were available for purchase to any who desired to buy them. In conjunction with the sale of the certificates Mr. Catterlin secured powers of attorney from several thousand presumptive heirs of the Harper estates, together with an assignment to him of 50% of the interests of the heirs if and when anything was recovered for them. Together with this assignment of 50% of the interests of the heirs there was represented to security holders and prospective purchasers of such securities and it was understood by them that upon successful termination of the quest, namely the distribution of the respective shares of the estate to the heirs thereof, one-half of the total for distribution would inure to the holders of the securities. Although the certificates as such would not necessarily require nor contemplate earnings, yet in conjunction with the plan under which they were sold and as a part thereof, they did represent an issuance which, if the venture was successful, would produce earnings which would pass to shareholders. The jury, then, was within its province in mak-ing determination that the securities were not exempt under the statutes of Ohio and that to sell them it was required that the defendant be licensed by The Division of Securities of the State of Ohio.

It was also claimed that in the set up of the corporation and the sale of the shares thereof, defendant acted upon the advice of Francis A. Hoover, an attorney of the City of Cincinnati.

We are inclined to believe that it would have been proper for the trial court to have given this charge, although it may have been undue stressing of purely evidential matter. The court admitted the testimony that the defendant had taken legal counsel on the formation of the corporation.

We are cited to the case of State v Whiteaker (Or.) 247 Pacific, 1077, to the effect that defendant's good faith in selling securities without permit, in violation of Blue Sky Law, is immaterial. An examination of this case, however, discloses that the indictment did not charge the defendant with selling securities knowingly and wilfully without a license.

We find in People v McCalla, 220 Pacific, (Cal.), 436, that in a prosecution for selling securities of a corporation in violation of Corporate Securities Act, paragraph 14, making a person who "knowingly" issues or sells securities without a permit from the corporation commissioner guilty of violating the statute, it was no defense that the defendant acted in good faith in reliance on the advice of counsel that the instrument was not a "security" within the statute; the term "knowingly" meaning with knowledge of the essential facts and not knowledge of the legal consequences, in view of the code under consideration.

In the instant case, even though the defendant was entitled to the charge it cannot be said to be prejudicial to refuse it because it would only have been proper as to the second count and he was found guilty on both counts.

Objection is urged to the charge of the jury, particularly as it related to the exemption under **Subsection 8624-3 GC.** The charge on the matter under consideration is:

"The definition by the Act of a certificate includes no element of value at the time it is sold, nor does it restrict the securities covered by the Act to shares in Corporations incorporated for profit.

"The Act further provides that certain securities may be exempt, and §8 of §8624-3 GC of the said Securities Act provides

for securities of a Corporation not for profit, and is as follows:

" 'Securities issued by a person, corporation or association organized not for profit shall include those organized exclusively for religious, educational, social, recreational, athletic, benevolent, fraternal, charitable, reformatory, cooperative marketing purposes, and for conducting a County Fair, providing no part of the earnings of such issuer inures to the benefit of any shareholder, member or individual'."

It will be noted that the court did not read the section exactly as it appears in the Code. After the word "Profit" there appears in the Code the word "including." In the charge it is "Shall include." This same difference is found later in the court's charge when the jury, after having been given the case, returned to the courtroom for further instructions. There probably is some difference in the meaning conveyed in the language of the court and that used in the statute. However, we find at page 386 of the record that the court, upon further instructions to the jury upon its return, used this language:

"Issuer means the Corporation issuing the certificates, whether it is for profit or not for profit—"providing no part of the earnings of such issuer inures to the benefit of any shareholder, member or individual."

This was a correct statement of the law and we believe cured any misunderstanding that might have occurred because of the inadvertence in the charge.

The court was well within its province in refusing to charge that the securities issued under the corporation were exempt, solely because it was organized not for profit.

During the trial of the case it appears that Miss Ankeney, a juror, took notes. The subject of these notes, in part at least, was a notation of those corporations, the securities of which were especially mentioned in §8624-3 GC as being exempt. Under the facts appearing in the record, we are satisfied that no prejudicial error resulted to the defendant by the action of the juror.

It is further claimed that the court erred in placing the burden of proof upon the defendant to prove that in the sale of the securities he was exempt from the necessity of securing a license.

The court followed the express provision of the statute, §8624-25, GC, which provides:

"In any indictment, complaint or information hereunder, it shall not be necessary to negative the existence of facts which would bring a security within the provisions of sections 3 or 5 or would bring a transaction within the exceptions of section 47, and the burden of proof shall be upon the party claiming the benefits of any such section."

It is claimed that this provision of the statute is unconstitutional. We believe the question is no longer an open one.

We are cited to Ex Parte Kreutzer v Westfahl, 204 N.W. (Wis.) 595, the seventh syllabus being in point:

"Legislature may place, on persons accused of violations of Blue Sky Law, burden of proving sales made by them are within exemptions on which they rely."

There are many cases in our own and other jurisdictions wherein statutes have been supported making the possession of a certain amount of intoxicating liquor prima facie evidence of an intent to violate the law against illegal sales. Among the first of a long line of cases with annotations is State v Barrett (N. C.), reported in 1 L.R.S. (N.S.) 626, to which there is appended a case note. The opinions are grounded upon the premise that the legislature has the right to change the rules of evidence upon the doctrine that an accused person has no vested right in any presumption or rule of evidence which the law making power cannot alter within certain limitations. In the instant case the theory of the Blue Sky Law is that the sale of securities; therein defined, without a license is unlawful. Proof of such sale raises a presumption of guilt and it is not, in our judgment, violative of defendant's constitutional rights to require him to establish, by a preponderance of the evidence, that he comes within an exemption provided in the statute and therefore is not guilty. It is not analagous to the defense of "alibi" because it is incumbent upon the State at every stage of the trial of a criminal case to establish that the defendant was present at the commission of the crime. Obviously a material element is missing if the defendant was not present. Our situation is more analagous to the defense of insanity, wherein the burden of proof is upon the defendant.

It is further claimed that the court erred in failing, after the conclusion of the case, to immediately charge the jury before proceeding with other business.

It appears that the final arguments of counsel had been completed about 3:20 P. M. and that the court over the objection of counsel for the defendant adjourned until the following day. We are satisfied that this was no violation of the discretionary rights of the court, nor does it appear that the court did not charge the jury before proceeding with other business, which is essential to the application of the statute.

We have examined all of the claims of error in the record, insofar as it is necessary to interpret them, and being of opinion that no prejudicial error to the defendant transpired in the trial of the cause the judgment will be affirmed.

KUNKLE and BARNES, JJ, concur.