UNITED STATES of America ex rel.
Edgar I. SHOTT, Jr., Relator-
Appellant,

v.

Dan TEHAN, Sheriff of Hamilton County,
Respondent-Appellee.

No. 15538.

United States Court of Appeals
Sixth Circuit.

Aug. 19, 1966.

Thurman Arnold, Washington, D. C., James F. Fitzpatrick, Arnold, Fortas & Porter, Washington, D. C., James G. Andrews, Jr., John A. Lloyd, Jr., Cincinnati, Ohio, of counsel, for appellant.

Calvin W. Prem, Asst. Pros. Atty., Cincinnati, Ohio, Melvin G. Rueger, Prosecuting Atty., Cincinnati, Ohio, on brief, for appellee.

Before O'SULLIVAN and CELEBREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

Appellant was found guilty by a jury in the Common Pleas Court of Hamilton County, Ohio on two counts of an indictment charging violation of the Ohio Securities Act, Sections 1707.01 through 1707.45, Ohio Revised Code. After exhausting his State remedies he instituted an action for a writ of habeas corpus under the provisions of 28 U.S.C. §§ 2241–2254, in the United States District Court, Southern District of Ohio, Western Division alleging violation of due process, guaranteed by the Fourteenth Amendment. The District Court dismissed Appellant's petition for a writ of habeas corpus and appeal was taken to this Court. On November 14, 1964, this Court, relying on Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), reversed the District Court and granted Appellant's writ, holding that comment in his argument to the jury by a State prosecuting attorney on Appellant's failure to take the stand, violated the Fifth Amendment to the Constitution of the United States which was protected against abridgment by the States by the Fourteenth Amendment. United States ex rel. Shott v. Tehan, 337 F.2d 990 (C.A. 6, 1964). The Supreme Court later in Griffin v. State of California, 380 U.S 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) ruled to the same effect as our opinion in *Shott*. Thereafter the Supreme Court granted certiorari in *Shott,* and affirmed this Court's holding that the prosecutor's comment violated Shott's constitutional rights. However, this Court's order was vacated on the ground that *Griffin* should not be applied retroactively except to pending criminal cases, and held that an application for a writ of habeas corpus pending at the time *Griffin* was decided, was not a pending criminal case. Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

The Supreme Court remanded the case to this Court for consideration of other claims contained in Appellant's petition for writ of habeas corpus which this Court had not considered.

Appellant is a member of the Bar of the State of Ohio, and a partner in the Shott Investment Company, located in Cincinnati, Ohio. On the 28th day of September, 1960, he issued to one Patrick Sestito a promissory note in the sum of $2250.00 which represented principal in the sum of $2000.00, and interest in the sum of $250.00, payable sixty days after date endorsed "Shott Investment Company by Edgar I. Shott, Jr."[1] Appellant at the time of issuance of this note was not licensed as a security dealer. He was indicted by the Grand Jury of Hamilton County, and charged with (1) selling securities without having been licensed as a security dealer, and (2) selling an unlicensed security.

The two-count indictment, under which the Appellant was charged, tried and convicted, was based upon the provisions of Ohio Revised Code Section 1707.44(A) and (C).[2]

It is to be noted that Section 1707.44 (C) uses the words "any security" in its prohibitory language, and Section 1707.-44(A) prohibits (1) engaging in the business of acting as a broker for others (2) selling securities or offering them for sale, or (3) engaging in the business of buying, selling or dealing in securities otherwise than through a licensed dealer.

Appellant contends that the Ohio Securities Act, under which he was convicted, is invalid under the due process clause of the Fourteenth Amendment because the procedural provisions create an evidentiary presumption that Appellant made an unlawful public offering of his promissory note and further shifted to the Appellant the burden of proving his innocence.

Appellant, in his attempt to establish that the Ohio Securities Act violates the due process clause of the Fourteenth Amendment, relies mainly on Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632 (1928); Morrison v. People of State of California, 291 U.S. 82, 54 S.Ct.

---

1. "Sixty (62) [sic] days after date for value received I promise to pay to the order of Patrick Sestito Twenty-two Hundred Fifty and no/100 dollars with Interest at the rate of .................. per centum per annum at .............. and I hereby authorize any Attorney at Law to appear in any Court of Record in the State of Ohio, or any other State in the United States, after the above obligation becomes due and waive the issuing and service of process and confess a judgment against me in favor of the holder hereof, for the amount then appearing due, together with costs of suit, and thereupon to release all errors and waive all right of appeal.

   Shott Investment Co.
   By Edgar I Shott, Jr.

   No. ..................
   Due November 29, 1960"

2. "Section 1707.44(A). No person shall engage in the business of acting as broker for others in the purchase or sale of securities, sell securities, cause them to be sold, offer them for sale, cause them to be offered for sale, or engage in the business of buying, selling, or dealing in securities otherwise than in transactions through or with a licensed dealer, unless the securities are of a kind specified in division (G) or (I) of section 1707.02 of the Revised Code, the transactions are of a kind specified in divisions (B) to (L), inclusive, and (O) to (Q), inclusive, of sections 1707.03 of the Revised Code, or in section 1707.04 or 1707.06 of the Revised Code, or the transactions are exempt under section 1707.34 of the Revised Code, without being licensed by the division of securities."

"Section 1707.44(C). No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:

"(1) Is not exempt under section 1707.-02 of the Revised Code, nor the subject matter of one of the transactions exempted in sections 1707.03, 1707.04, and 1707.34 of the Revised Code, has not been registered by description or qualified, and is not the subject matter of a transaction that has been registered by description; * * *."

281, 78 L.Ed. 664 (1934); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L. Ed.2d 210 (1965).

These cases set forth the law governing statutory presumptions and the constitutional validity of shifting the burden of proof to the defendant. We concede that the Fourteenth and Fifth Amendments set limits upon the legislature to make proof of one fact, or groups of facts, proof of the ultimate fact upon which guilt is predicated. In the instant case we find that the shifting to the Appellant of the burden of proving by a preponderance of the evidence the exempt status of the promissory note does not fall within the factual basis of the cases relied upon by Appellant, and is not unreasonable, nor does it offend any principle of justice, nor does it constitute a denial of due process of law.

The Ohio Securities Act, Ohio Revised Code Section 1707.01, encompasses promissory notes within the definition of securities subject to the Act. It provides in Section 1707.02(G) that commercial paper and promissory notes are exempt when they are not offered directly or indirectly for sale to the public. Section 1707.45 [3] places upon the Appellant the burden of claiming the benefits of Section 1707.02(G).

Where an individual or corporation engages in occupations in which the public has an interest, that occupation may be regulated under the police power of the State. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). The power of the State to provide for the general welfare authorizes it to establish such regulations as will secure or tend to secure the people against ignorance often due from an incomplete disclosure of facts by one in the unique position to know the facts. The Ohio Securities Act, commonly referred to as Ohio Blue Sky Law, was adopted to prevent fraudulent exploitations through the sale of securities. The constitutional validity of the Ohio Securities Act regulating the sale of all securities has been upheld in Hall v. Geiger-Jones Company, 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1916). We believe the provisions of Ohio Revised Code Section 1707.44 regulating the sale of all securities unless specifically exempted, and the provision of Ohio Revised Code Section 1707.45 which places the burden upon the defendant to show that securities are sold under such circumstances as to bring the sale within one of the exemptions provided by the Act, are constitutionally within the police power of the State of Ohio.

Provisions similar to Ohio Revised Code Section 1707.45 are found in most State securities acts. Loss and Cowett, Blue Sky Law, Little, Brown & Company, 1958 Ed., Section 403, page 381. See also Uniform Securities Act, Section 402(d).

The validity of this Section has been affirmed by State courts on previous occasions and courts have upheld the shifting of the burden of proof even in the absence of specific statutory language. Kreutzer v. Westfahl, 187 Wis. 463, 204 N.W. 595 (1925); State v. Voorhies, 169 La. 626, 125 So. 737 (1930); Commonwealth v. Freed, 106 Pa.Super. 529, 162 A. 679 (1932); Nelson v. State, 355 P.2d 413 (Okl.Cr.1960); Catterlin v. State, 16 Ohio Law Abst. 410 (1939), appeal dismissed for want of substantial federal question, 128 Ohio St. 110, 190 N.E. 578; 292 U.S. 614, 54 S.Ct. 868, 78 L.Ed. 1473, citing Morrison v. People of State

---

3. "Section 1707.45, Revised Code of Ohio. In any indictment, complaint, or information under section 1707.44 of the Revised Code, it shall not be necessary to negative the existence of facts which would bring a security within section 1707.12 or 1707.15 of the Revised Code, or would bring a transaction within sec-

tion 1707.03, 1707.04 or 1707.06 of the Revised Code or to negative existence of facts which would bring a transaction within the exceptions of sections 1707.33 and 1707.34 of the Revised Code. *The burden of proof shall be upon the party claiming the benefits of any such sections.*" (Emphasis added.)

of California, 291 U.S. 82, 88–91, 54 S.Ct. 281, 78 L.Ed. 664; Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632; Mugler v. State of Kansas, 123 U.S. 623, 674, 8 S.Ct. 273, 31 L.Ed. 205. See also Loss, Securities Regulations, Little, Brown & Co., 2 Ed. 1961, Vol. 1, page 712; C. C. H. Blue Sky Law Reporter, Paragraph 3765.

In Catterlin v. State, supra, the court held the legislature had the power to declare the sale of securities without a license was unlawful, and that the legislature further had the right to place on persons accused of violating the Blue Sky Law the burden of proving the sales made by them were within the exemptions on which they relied. In dismissing the appeal for lack of federal question, the Supreme Court cited Morrison v. People of State of California, supra, and Casey v. United States, supra. Turning to Morrison v. People of State of California, supra, Mr. Justice Cardozo made these pertinent statements:

> "The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression. * * *

> " 'It is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime (citation omitted).' * * *

There are, indeed, 'presumptions that are not evidence in a proper sense but simply regulations of the burden of proof.' Casey v. United States, supra. Even so, the occasions that justify regulations of the one order have a kinship, if nothing more, to those that justify the others. For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance (Yee Hem v. United States, supra; Casey v. United States, supra), or, if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception."

The Ohio Blue Sky Law, as do similar State security regulations, places the burden on an offeror or seller of a security to determine if the security may be sold lawfully. Once the seller has determined that a security falls within a class of exempt securities, that knowledge is peculiarly within the personal knowledge of the seller. Considering the purpose of the State Securities Act, it cannot be said that lifting the burden of proof from the State in criminal prosecutions and casting upon the defendant the defense that he comes within an exemption is unreasonable and unfair. Here there is a general prohibition which is applicable to everyone who is unable to bring himself within the range of an exemption.

■ While the Ohio Statute places the burden upon a defendant to avail himself of the exempt status,[4] it does not diminish the proof necessary for conviction imposed upon the state. The burden remains with the State to offer proof of

---

4. The shifting of the burden of proof to the defendant has its counterpart in Federal statutes which have been upheld against constitutional attack: Section 5851, Title 26 U.S.C., Sipes v. United States, 321 F.2d 174 (C.A. 8, 1963); Starks v. United States, 316 F.2d 45 (C. A. 9, 1963); Frye v. United States, 315 F.2d 491 (C.A. 9, 1963, cert. denied 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76); United States v. Forgett, 349 F.2d 601 (C.A. 6, 1965); The Narcotics Drug Import and Export Act, 21 U.S.C.A., Sections 176a, 176b.

the essential elements of the indictment; that the offense was committed in Hamilton County, Ohio; that Appellant was selling securities without having been licensed as a security dealer; and that Appellant was selling unlicensed securities.

There is ample evidence in the record that the State of Ohio sustained its burden of proof by establishing each of the foregoing, and having done so, it was incumbent upon the Appellant to avail himself of the exemption provisions of Ohio Revised Code Section 1707.02 (G), by introducing evidence that Appellant came within the exemption provision.[5] The Appellant chose not to testify, which was his constitutional right, and introduced no evidence on his behalf, except his attempt to show that this was purely a loan between friends, by the cross-examination of the State's chief Witness Sestito. However, this in no way diminished the duty of the State to prove the Appellant guilty beyond a reasonable doubt, and the Court properly charged the jury to that effect as follows:

"* * * If you do not find that the State has proved beyond a reasonable doubt all these essential elements which I read to you; namely, that this instrument was sold or disposed of by Edgar I. Shott to Patrick Sestito in Hamilton County, Ohio, on September 28th without a license and without being registered, and that said instrument is a security, if you do not find that the State has proved all those elements beyond a reasonable doubt, then your verdict must be not guilty of both charges in the indictment.

"But, even though you do find that the State has proved beyond a reasonable doubt all the essential elements of the crimes charged in the indictment, if you also find that the Defendant has proved by a preponderance of the evidence that this instrument is an exempt security under the rules I have given you, then your verdict must be not guilty of both counts of the indictment."

The evidence did not demonstrate that this was a single private transaction involving the giving of a promissory note to a friend for a personal loan as alleged by Appellant. The jury may have properly considered the necessity for Appellant to operate as Shott Investment Company and to endorse the note "Shott Investment Company, by Edgar I. Shott, Jr." if all he was interested in was to issue a single promissory note in the amount of $2,000.00, carrying 12½ percent interest to a friend. We believe the answer to this is best found in the admissions of Appellant's counsel in his opening statement:

"Now, the Defendant will admit and concede precisely what his idea, what his scheme, plan and system was in entering into this loan transaction with Pat Sestito. It was simply this: The Defendant was loaning money to one Leslie D. Stickler, who was borrowing it regularly from him for the purpose, according to Stickler, of enabling Stickler to make short-term, high-interest loans to contractors. When Shott borrowed the money from Sestito, it was his intention; that is, Shott's intention and plan to loan this money to Stickler, and to pay Sestito for the use of his money; that is, Sestito's money, one-half of the amount which Stickler had agreed to pay Shott for the use of Shott's money."

The jury could reasonably find that the Appellant was issuing this note for the sole purpose of investing the money with Stickler, and not as a personal loan. This is further demonstrated by the fact that Sestito was to receive a profit of one half of the amount that Stickler agreed to pay Appellant. Appellant was to share equally with Sestito in the bene-

5. Keeping in mind the broadly remedial purposes of Federal securities legislation, imposition of the burden on an issuer who would plead the exemption seems to us fair and reasonable. S.E.C. v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494.

fits of profit derived from Stickler. Appellant thereby was acting as broker for the investment of Sestito's money with Stickler. This is further developed by Sestito's testimony.

"Q. Now, let me ask you, Mr. Sestito, if on that date you had any conversation with Mr. Shott about the Shott Investment Company? A. Yes, sir, we did.

Q. And what was the conversation you had? A. Well, I mean of course, he approached me on this investment, and he told me—he asked me if I wanted to make some money. Of course, naturally, everybody wants to make money. And so I asked him a few questions about it and, of course, he hold me that this money was being invested on financing buildings, and so forth.

Q. Well, had you heard or did you have any knowledge about this Shott Investment Company before you went there on that day? A. Well, sir, I mean I have heard around. I mean, you know, there was such an investment going around.

Q. And what was it that Mr. Shott told you about the company and the investments that were being made? A. Well, I mean, of course, naturally, I asked him if I could check it out, of course, knowing Mr. Shott I figured, you know, it would be, you know, a pretty sound investment when he mentioned, you know, like investing it in buildings and financing, I know finance companies make a lot of money, I do know that.

Q. Did he say who was investing it in buildings and financing and making a lot of money? A. No, sir, he didn't state that.

Q. Was there any conversation had with you at this time about your participating in those investments? A. Sir, I didn't understand that.

Q. Did he ask you for any money? A. Yes, he did.

Q. Did he ask you for any particular amount? A. Well, he asked me how much I could come up with and, of course, I mean I told him I thought I could come up with a thousand, and then it sounded so good, I mean I come up with two thousand.

Q. What sounded so good? A. Well, the percentage, twelve and a half per cent.

Q. What were the arrangements that were to be made? A. Twelve and a half per cent for 60 days.

Q. Let me ask you if, in the course of your conversations about the Shott Investment Company, that you had with Mr. Shott on that day in his office, he showed you anything about the company? A. Well, yes, he showed me, oh, I don't know what you would call it. An eight and a half by eleven stationery, plaque more or less, showing about these Shott investments.

Q. What do you mean showing about the Shott investments? A. Of course, I couldn't read it. I couldn't remember it. It told about the company, Shott's investments.

Q. Did it have writing or figures or what did it contain? A. Well, it just stated, you know, like—told about the company, like it's been in effect since—of course, I couldn't remember the date. I think it said something like 1955.

\* \* \* \* \* \*

Q. Now, between September the 28th, 1960 and November the 29th, 1960, did you come into contact with Mr. Shott? A. Yes. When it was due, I mean his secretary called me and asked me if I wanted to parlay it or—

Q. Wanted to what. A. Wanted to, you know, to parlay it?

Q. What do you mean parlay it? A. Well, to let it ride, or, you know, or draw the profit out. Of course, I told her I wanted to, you know, draw it out.

Q. She asked you if you wanted to let it ride? A. Yes, sir.

Q. What did you understand that to mean? A. Well, I mean to invest it all over again.

Q. Reinvest it? A. Yes, sir.

Q. Did you reinvest it? A. No, I didn't.

Q. What did you do? A. I withdrew my money.

Q. Well, did you go there to the office? A. Yes, sir, I went there to the office and I received a check.

Q. How many checks did you receive? A. One check for the full amount.

Q. $2,250.00? A. Yes, sir."

■ The exempt status is not conditioned upon any specific number of issues, therefore the number of notes issued is not determinative of whether the offering is exempt under the provisions of the Ohio Securities statutes.

The United States Supreme Court in its interpretation of exemptions under the Federal Securities Act, in Securities Exchange Commission v. Ralston Purina Co., 346 U.S. 119–125, 73 S.Ct. 981, 97 L.Ed. 1494 stated:

"Indeed nothing prevents the commission, in enforcing the statute, from using some kind of numerical test in deciding when to investigate particular exemption claims. *But there is no warrant for superimposing a quantity limit on private offerings as a matter of statutory interpretation.*" (Emphasis added.)

■ Appellant further attacks the Ohio Securities Act by asserting that it violates the Fourteenth Amendment because the Act, as applied, is unconstitutionally vague and indefinite. "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed. 2d 561 (1963).

Ohio Revised Code Section 1707.01 defines the various terms used in the Act, including a comprehensive definition of a security. Ohio Revised Code Sections 1707.02 and 1707.03 designate certain securities and certain transactions exempt from the requirement of registration. Ohio Revised Code Section 1707.44(A) provides in part that "No person shall * * * sell securities * * * otherwise than in transactions through or with a licensed dealer", unless specifically exempted by other Sections of the Act. Ohio Revised Code Section 1707.44(C) provides in part that "No person shall knowingly and intentionally sell * * * any security * * which is not specifically exempt." Ohio Revised Code Section 1707.45 places the burden upon the defendant to bring a transaction within an exemption.

The Ohio Securities Act, prohibiting the sale of securities which are not otherwise exempt, forewarns of its reach and coverage. The language sufficiently conveys a definite warning as to the proscribed conduct, when measured by common understanding and commercial practice. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, rehearing denied 355 U.S. 852, 78 S.Ct. 8, 2 L.Ed.2d 60 (1957).

■ The Ohio Securities Act makes it plain that a security must be sold through a licensed dealer unless the security or the transaction is exempt. The burden is upon the issuer to determine initially whether a sale or transaction is exempt. The exemption of promissory notes not offered directly or indirectly for sale to the public is not unconstitutionally vague. United States v. Crosby, 294 F.2d 928, 952 (C.A. 2, 1961) cert. denied [Mittleman v. U. S.; Pettit v. U. S., and Meredith v. U. S.], 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523. The statute clearly sets forth the conduct proscribed.

■ Appellant further claims that the prosecutor's comment on the Appellant's failure to take the witness stand in his defense violated his constitutional right to due process.

In Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), the Supreme Court held the doctrine of Griffin v. State of California, supra, would not be applied retrospectively. In *Griffin*, the Supreme Court

held that adverse comment on a defendant's failure to testify in a state criminal trial violated the privilege against self-incrimination. We find no basis to the alternative argument now presented that the prosecuting attorney's summation amounted to unfair testimony such as to violate due process.

The judgment of the District Court is affirmed.