**UNITED STATES of America ex rel. Leslie D. STICKLER, Petitioner-Appellant,**

v.

**Dan TEHAN, Sheriff of Hamilton County, Respondent-Appellee.**

**No. 16420.**

United States Court of Appeals
Sixth Circuit.

Aug. 19, 1966.

F. Lee Bailey, Boston, Mass., Bernard A. Kansky, Boston, Mass., of counsel, for appellant.

Fred J. Cartolano, Cincinnati, Ohio, Melvin G. Rueger, Pros. Atty., Fred J. Cartolano, Asst. Pros. Atty., Cincinnati, Ohio, on brief, for appellee.

Before WEICK, Chief Judge, and PHILLIPS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant, Leslie D. Stickler, appeals from an order of the District Court denying his petition for a writ of habeas corpus. Appellant, an attorney, was indicted and convicted in the Common

Pleas Court of Hamilton County, Ohio, of selling securities without having been licensed as a security dealer, and selling unlicensed securities.[1]  The conviction was affirmed by the Court of Appeals, First Appellate District of Ohio, and the Supreme Court of Ohio declined review, State v. Stickler, 174 Ohio St. 382, 189 N.E.2d 433.  The Supreme Court of the United States denied certiorari, 375 U.S. 438, 84 S.Ct. 506, 11 L.Ed.2d 471.  Appellant instituted this action by filing a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio, Western Division.

Appellant contends that the Ohio Securities Act is invalid under the due process clause of the Fourteenth Amendment because the procedural provisions create an evidentiary presumption that Appellant made an unlawful public offering of promissory notes and shifted to the Appellant the burden of proving his innocence.

In a companion case, United States ex rel. Shott v. Tehan, 6 Cir., 365 F.2d 191,[2] which arose on similar facts and an identical indictment, this Court held constitutional Ohio Revised Code Section 1707.45 which places on a defendant the burden of proving the exempt status of a promissory note.  That decision is adopted here.

However, there are several additional issues presented in this case which were not present in United States ex rel. Shott v. Tehan, supra.  Appellant first argues that his constitutional right to an impartial jury was violated by the failure of the trial court to protect the jury against extrinsic and prejudicial influence.

While Appellant's jury was being impanelled, one John Ruf, also indicted for similar offenses and slated to go to trial immediately after Appellant, disappeared.  On the night of his disappearance, Ruf's attorney appeared on television and made the following statement:

"Well, Mr. Ruf has been extremely upset and depressed ever since Leslie D. Stickler's financial dealings became public.  Mr. Ruf lost his life savings through loans made to Stickler.  He felt responsible for the losses of his friends and relatives who also invested with Stickler.  He has been unable to find a job and he has been very nervous.  Mr. Ruf was in the office Tuesday morning to discuss his trial which was scheduled for next Monday.  He was here for about two hours, he left at noon and has not been seen or heard from since.

"I only hope that he will be located in time to go to trial on Monday so that his complete innocence of any criminal wrong-doing can be established."

Appellant's attorney was granted permission by the Court to determine if any of the prospective jurors had heard this television broadcast.  Three had.  One stated he believed that anybody who had heard the broadcast would have formed an opinion prejudicial to the defendant.  That juror was removed for cause.  The second juror was removed by a preemptory challenge.  The third juror was not challenged, although at the time of his disclosure that he had heard the broadcast, the defendant had not exhausted his preemptory challenges.

After the trial began, the Cincinnati newspapers reported that Ruf had been found dead with a bullet in his head.  One of the news articles, entitled, "Stickler Case Figure Is Dead", reported, in part, the following:

"The body of John J. Ruf, 57, indicted in a multi-million dollar investment fraud, was drawn from the Ohio River.  * * * There was a bullet wound in his head.  * * * The Homicide Squad was investigating to determine whether Ruf, missing for a week, had

---

1.  The two-count indictment was based upon the provisions of Ohio Revised Code Section 1707.44(A) and (C).

2.  Decided the same day as the instant case.

shot himself or was a victim of foul play.

"Ruf, a bookkeeper was involved in the Leslie D. Stickler case now on trial in Common Pleas Court. Ruf's family said late Wednesday they feared for his life because he had been 'despondent and confused' since he, Stickler and two others were indicted a month earlier.

"After Ruf's body was found, Eugene Smith, Attorney for Stickler demanded police protection for his client. 'Ruf was ready to spill the beans and Stickler is ready to do the same,' Smith declared.

"The charges arose from Ruf's involvement with Stickler, 38, Amberley Village attorney accused of illegal financial dealings in a complicated investment of $2.5 to $3 million by a number of persons. Stickler's trial started Thursday.

"Ruf, friends said, felt he had been 'a fool and a dupe', but denied that he had done anything illegal."

Appellant's request to interrogate the jurors was denied by the trial court. Appellant claims the article was presumptively prejudicial to him and that it should be presumed the jurors had read the article.

The trial court on several occasions throughout the trial instructed the jurors to refrain "as far as humanly possible from either listening to the radio or television broadcasts or reading the newspaper, any article that concerns this case". During the voir dire the Court instructed the jurors as follows:

> "But this Court will caution you, as long as you are a prospective juror, if you become a juror, refrain, as far as it is possible, humanly possible, from either listening to the radio or television broadcasts or reading the newspaper, any article that concerns this case. This case and your verdict, if you serve as a juror, must be based absolutely upon the evidence that you hear in this courtroom and the law which the court gives you to apply to

the facts as you find them. All right, I think that is sufficient. I did have a little restraint on what I said to you, because it is utterly impossible for this Court to control your thoughts of what you see when you are away from the court house, or even while you are sitting here. All I can give you is the rule, and it is very, very important."

In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), a habeas corpus proceeding, the Supreme Court held that the failure of the State to accord a fair hearing to one accused of a crime violates the due process clause of the Fourteenth Amendment; and a jury trial is not fair unless the jury is impartial.

The challenger has the burden of persuasion whether the jurors are impartial in the constitutional sense. Geagan v. Gavin, 292 F.2d 244, 246 (C.A. 1, 1961), cert. denied, 370 U.S. 903, 82 S.Ct. 1247, 8 L.Ed.2d 399 (1962). This burden is one which must be carried " 'not as a matter of speculation but as a demonstrable reality.' " United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331, 1338 (1956); Stroble v. State of California, 343 U.S. 181, 198, 72 S.Ct. 599, 607, 96 L.Ed. 872, 885 (1952). See also Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L. Ed. 268, 276 (1942). In determining whether a juror is impartial or not, the Supreme Court said in Irvin v. Dowd, supra:

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or in-

nocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Spies v. People of State of Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Reynolds v. United States, supra."

■ The test is whether the publicity created such a deep impression upon a juror such as to raise a presumption of partiality, and which would close the juror's mind against testimony offered in opposition to the purported facts. Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878); Irvin v. Dowd, supra.

In the *Irvin* case, the petitioner had committed multiple murders. Many passion arousing events were reported in the newspapers. The inflamed and prejudicial news coverage was such that 268 prospective jurors were excused for cause, and ninety percent of the jurors examined entertained some opinion as to the guilt of the accused. The newspapers announced the petitioner had confessed to six murders. The Supreme Court held petitioner was not accorded a fair and impartial trial. A similar fact pattern was present and a similar result was reached in Shepherd v. State of Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951). See also Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, decided June 6, 1966.

In Krogmann v. United States, 225 F.2d 220 (C.A. 6, 1955), a newspaper article erroneously reported the defendant had admitted he took part in the crime. The Court held this statement raised a rebuttable presumption that the rights of the defendant had been prejudiced. See also Briggs v. United States, 221 F.2d 636 (C.A. 6, 1955), and Marson v. United States, 203 F.2d 904 (C.A. 6, 1953).

■ It would be a marked extension of the holdings in Irvin v. Dowd, supra, and Sheppard v. Maxwell, supra, to say that the reporting of Ruf's death would create such a deep impression upon the jury that as a matter of law there was a presumption of partiality. We cannot find that Appellant's constitutional right to a fair and impartial jury was denied by the Court's failure to interrogate the jurors to determine if they had read the article. An impossible standard would be created if the trial court was required to interrogate a jury to determine if they violated the Court's instructions to avoid news coverage of the case every time something was reported relating to the case. What was said in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), is applicable here:

"It is a basic premise of our jury system that the court states the law to the jury and that the jury applies that law to the facts as the jury finds them. Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense. Based on faith that the jury will endeavor to follow the court's instructions, our system of jury trial has produced one of the most valuable and practical mechanisms in human experience for dispensing substantial justice."

We do not believe the news report of Ruf's death was so prejudicial to the Appellant that the trial court should have been compelled to interrogate the jury to determine if they had read the article. The crime for which the Appellant was charged was a technical one. There were not present passion arousing events, nor was there a hue and cry for Appellant's conviction. The reporting of Ruf's death did not have the effect of pointing an accusing finger of guilt at the Appellant. Compare this with the news report that the defendant confessed, Irvin v. Dowd, supra, and Krogmann v. United States,

supra, and the prejudicial statements in Coppedge v. United States, 106 U.S.App. D.C. 275, 272 F.2d 504 (1959), Marson v. United States, supra, and Briggs v. United States, supra.

We find no threat or menace to the integrity of the trial, nor abuse of discretion on the part of the trial court in refusing to interrogate the jury on the question of an article appearing in a local newspaper. Further, Appellant has not brought forth any evidence persuasive that the jurors did not render a fair and impartial verdict.

Upon examination, we find that Appellant's other claimed errors present no meritorious constitutional questions. The judgment of the District Court is affirmed.