CARROUSEL NORTH, INC., APPELLEE, *v.*
CHELSEA MOORE COMPANY, APPELLANT;
BROWN COUNTY SKI MOUNTAIN
RESORT, INC., DEFENDANT.

(No. C-820718—Decided May 25, 1983.)

*Clark & Eyrich Co., L.P.A., Mr. David J. Eyrich* and *Mr. T. Scott Gilligan,* for appellee.

*Messrs. Wood, Lamping, Slutz & Reckman* and *Mr. David A. Caldwell,* for appellant.

*Per Curiam.* Plaintiff-appellant, Carrousel North, Inc. ("plaintiff"), brought this action against defendant-appellant, Chelsea Moore Company ("defendant"), and Brown County Ski Mountain Resort, Inc., to recover a $10,000 earnest money deposit that defendant was holding in escrow. Defendant counterclaimed against plaintiff for $55,000 allegedly due as a brokerage commission. Both plaintiff and defendant moved for summary judgment on the counterclaim. Plaintiff's motion was granted and defendant appeals, claiming in a single assignment of error that the court erred in granting plaintiff's motion for summary judgment and in overruling defendant's motion on the counterclaim. We disagree.

Plaintiff, an Ohio corporation with its principal place of business in Ohio, owns all of the stock in Brown County Inns, Inc., an Indiana corporation that owns the Brown County Inn, a motel located in Nashville, Indiana. Defendant is a real estate broker licensed in Ohio and Indiana. The parties entered into a standard real estate listing agreement in Ohio granting defendant the exclusive listing for the sale of the Brown County Inn. An addendum to this agreement provided that plaintiff would pay defendant a commission of $150,000 for its services, which would be earned "only when a binding contract for sale has been executed and title has passed."

Defendant procured Brown County Ski Mountain Resort, Inc. ("Resort"), an Indiana corporation, as a prospective purchaser of the Brown County Inn. Resort submitted through defendant a written offer to buy the real estate, but plaintiff rejected it. However, plaintiff and Resort continued to negotiate, and finally entered into a written agreement entitled "Agreement of Purchase of Real Estate," dated June 26, 1979, wherein Resort agreed to purchase fifty percent of the stock of Brown County Inns, Inc.[1] The

---

[1] The Agreement provided in part:

"WHEREAS, the Purchaser (Brown County Ski Mountain Resort, Inc.) desires to purchase an interest in the Brown County Inn from the Seller, and the Seller is willing to sell 50% of the stock upon the terms and subject to the conditions contained herein.

"NOW, THEREFORE, in consideration of the foregoing, the mutual agreements contained herein and for other valuable considerations, the parties hereto agree as follows:

"*1. Purchase from Corporation.* The Purchaser shall purchase from the Seller, and the Seller shall sell to the Purchaser, the 50% interest in Brown County Inns, Inc., together with all improvements thereto and the items of tangible personal property belonging to or used in connection therewith but not limited to furniture, fixtures, restaurants, automobiles, trucks, and all other items of equipment used in connection with the maintenance and operation of the Brown County Inn, said items of personal property to be listed on a schedule and attached hereto and made a part hereof as 'Exhibit B' prior to the time of closing. The Seller shall represent and warrant as of the closing hereunder that all such property is in good working condition and shall set forth and give notice to the Purchaser any defects in said personal property. The purchase price to be paid by the Purchaser to the Seller for the Brown County Inn shall be Four Hundred Forty-Five Thousand ($445,000.00) Dollars. For this purchase price the Purchaser shall own a 50% interest in Brown County Inns, Inc., subject to counsel for the Purchaser reviewing all corporate records and the parties arriving at a mutual understanding as to voting rights and positions on the Board of Directors.

"* * *

"*8. Closing and Possession.* * * * At the closing the seller shall executive [*sic*] and deliver certain shares of stock representing 50% interest in Brown County Inns, Inc., and

agreement further provided that Resort would deposit $10,000 in earnest money with defendant upon execution of the agreement, and this deposit is the subject of the complaint. Plaintiff and defendant entered into another commission agreement, dated June 25, 1979, that provided:

"Seller agrees to pay to Chelsea Moore Company a commission of fifty five thousand for the sale of Fifty Percent (50%) Interest of Brown County Inn, Nashville, Indiana.

"Of the total commission, Buyer has agreed to pay $20,000 of the total commission due Chelsea Moore Company.

"Said commission is due and payable at the closing of the sale of the property."

All parties appeared at a scheduled closing, but a dispute arose and the sale was never closed. Plaintiff sued defendant to recover the $10,000 in earnest money, and defendant counterclaimed for the commission recited in the June 25, 1979 commission agreement. The trial court granted plaintiff's motion for summary judgment on the counterclaim, on the grounds that enforcement of the commission agreement would violate R.C. 1707.14(A)[2] and 1707.44(A)[3] of the Ohio Blue Sky Laws because defendant was acting as a broker in the sale of securities without being licensed as a dealer.

Defendant contends first, that it was entitled to its commission despite the failure to consummate the sale, and second, that it was not required to have a securities dealer's license for several reasons: the transaction was an attempted sale of real estate and not stock; the transaction was exempt from R.C. 1707.44(A) under R.C. 1707.03(B) and (D); and a single transaction does not constitute a violation of R.C. 1707.14(A) or 1707.44(A). Assuming *arguendo* that defendant was entitled to its commission under the agreement even though the sale did not close, we find that the agreement cannot be enforced because defendant's activities under the agreement violate R.C. 1707.14(A) and 1707.44(A).

R.C. 1707.14(A) requires that any person who engages in this state in the business of acting as a broker for others in the purchase or sale of securities must be a licensed dealer. R.C. 1707.44(A) provides that such conduct without a license is a violation of the Ohio Blue Sky Laws, unless the transaction is exempt. Defendant asserts that these provisions are inapplicable because it acted as a broker of a real estate transaction, and even though the plaintiff and Resort restructured it into a sale of stock, the transaction was essentially a real estate deal. However, the subject matter of the instant transaction was the *stock* of Brown County Inns, Inc. Although the commission agreement forming the basis of defendant's claim refers to the sale of a "fifty percent interest" of the Brown County Inn, Resort was to receive at the closing shares of stock in Brown County Inns, Inc., not a deed to real estate. Regardless of defendant's intent, the final contract between

Purchaser shall be satisfied that Brown County Inns, Inc. owns title to the property herein described in Exhibit A and all the assets attendant thereto."

[2] R.C. 1707.14(A) provides:

"No person shall engage in this state in the business of acting as a broker for others in the purchase or sale of securities unless such person is licensed as a dealer by the division of securities."

[3] R.C. 1707.44(A) provides in part:

"No person shall engage in the business of acting as broker for others in the purchase or sale of securities, sell securities, cause them to be sold, offer them for sale, cause them to be offered for sale, or engage in the business of buying, selling, or dealing in securities otherwise than in transactions through or with a licensed dealer, unless * * * the transactions are of a kind specified in divisions (B) to (L), (O) to (R), (U), and (V) of section 1707.03 of the Revised Code, * * * without being licensed by the division of securities."

plaintiff and Resort involved the sale of corporate stock evidencing part ownership of a corporation. Title to the real estate, the Brown County Inn, was not to be transferred but would remain in Brown County Inns, Inc. R.C. 1707.01(B) defines a "security" as "any certificate or instrument which represents title to or interest in * * * the capital, assets, profits, property, or credit of any person * * *. It includes shares of stock * * *."[4] This definition does not exclude a sale of stock merely because it originated in a real estate transaction.

Defendant's conduct was not exempt under R.C. 1707.03(B) or (D).[5] Ohio Adm. Code 1301:6-3-14(A) requires that all persons in the business of acting as brokers for others in the sale of securities have a license even if the individual transaction might be exempt.[6] A broker is an agent employed as a middleman to effect bargains and contracts who does not take possession of the subject matter of the negotiations. *French* v. *Toledo* (1909), 81 Ohio St. 160. The R.C. 1707.03(B) exemption does not apply to defendant's ac-

tivities because it was clearly acting as a broker and not making a sale "on behalf of" the owner, as would a fiduciary. The R.C. 1707.03(D) exemption is also inapplicable because although that section exempts a sale to an "institutional investor," assuming *arguendo* that this phrase includes all corporations, R.C. 1707.14 provides that "no person other than an issuer selling its own securities shall engage in the business of selling securities to an institutional investor unless such person is licensed as a dealer."

Defendant further argues that the commission agreement does not violate R.C. 1707.14(A) and 1707.44(A) because the provisions prohibit only "engag[ing] in the business of acting as broker," which does not include a single transaction.[7] We find that a single unlicensed transaction constitutes a violation. See *Diversified Property Corp.* v. *Winters Natl. Bank & Trust Co.* (1967), 13 Ohio App. 2d 190 [42 O.O.2d 307]; see, also, *United States, ex rel. Shott,* v. *Tehan* (C.A. 6, 1966), 365 F. 2d 191 [37 O.O.2d 341], certiorari denied (1967), 385 U.S. 1012 [38 O.O.2d 244] (ex-

---

[4] The trial court found that defendant acted as a broker in securities however the transaction was structured, because R.C. 1707.01(B) includes in the definition of securities "real estate not situated in this state and any interest in real estate not situated in this state." We find that this provision, as well as R.C. 1707.33 governing transactions in foreign real estate, is inapplicable to this case because the transaction involved an attempted sale of stock, not real estate.

[5] R.C. 1707.03 provides in part:

"(B) A sale of securities made by or on behalf of a bona fide owner, neither the issuer nor a dealer, is exempt, if such sale is made in good faith and not for the purpose of avoiding sections 1707.01 to 1707.45 of the Revised Code, and is not made in the course of repeated and successive transactions of a similar character. Any sale of securities over a stock exchange which is lawfully conducted in this state and regularly open for public patronage and which has been established and operated

for a period of at least five years prior to such sale at a commission not exceeding the commission regularly charged in such transactions is also exempt."

"(D) A sale to the issuer, to a dealer, or to an institutional investor is exempt."

[6] Ohio Adm. Code 1301:6-3-14(A) provides:

"A dealer's license shall be required of every person who engages in the business of acting as broker for others in the purchase or sale of securities, irrespective of the fact that such securities may be classed as 'exempt' by the Ohio Securities Act, and irrespective of the fact that such securities may be the subject of transactions classed as 'exempt.' "

[7] Defendant cites *Kroger Grocery & Baking Co.* v. *Schwer* (1929), 36 Ohio App. 512, for the proposition that a single transaction cannot constitute engaging in business. However, that case is not controlling because it was limited to a construction of G.C. 5894, which prohibited "trafficking" in cigarettes.

empt status under R.C. 1707.02[G] is not conditioned upon any specific number of issues).

The commission agreement in this case would amount to a violation of R.C. 1707.14(A) and 1707.44(A) if performed. It will not be enforced. *Diversified Property Corp.* v. *Winters Natl. Bank & Trust Co., supra; Yoder* v. *So-Soft of Ohio, Inc.* (C.P. 1963), 94 Ohio Law Abs. 353 [30 O.O. 2d 566]. Defendant is not entitled to recover its commission.

The assignment of error is overruled. We affirm.

*Judgment affirmed.*

BLACK, P.J., DOAN and KLUSMEIER, JJ., concur.