262 N.J. Super. 96 (1992)
619 A.2d 1332
BRAMBLEWOOD INVESTORS, LTD., PLAINTIFF AND DEFENDANT ON THE COUNTERCLAIM; THIRD PARTY PLAINTIFF ON CLAIM AGAINST MORTENSON, FLEMING, GRIZZETTI & BOIKO,
v.
C & G ASSOCIATES, ROBERT S. MORTENSON, RICHARD J. GRIZZETTI, JOHN A. BOIKO, DENNIS M. GAITO, KENNETH M. GOLDMANN, AND ANGELO J. COPPOLINO, DEFENDANT/COUNTERCLAIMANTS, THIRD PARTY PLAINTIFFS, BRAMBLEWOOD ASSOCIATES, LTD., UNITED CAPITAL SECURITIES, INC., UNITED CAPITAL CORPORATION, UNITED CAPITAL PROPERTIES, INC., UNITED CAPITAL INVESTMENTS, INC., POFF CONSTRUCTION, INC., PCI MANAGEMENT, INC. AND UNIVERSAL CONSTRUCTORS, INC., THIRD PARTY DEFENDANTS, MORTENSON, FLEMING, GRIZZETTI, & BOIKO, THIRD PARTY DEFENDANTS ON CLAIM ASSERTED BY PLAINTIFF BRAMBLEWOOD INVESTORS, LTD.
Superior Court of New Jersey, Law Division Union County.
Decided June 26, 1992.
*99 Frank E. Ferruggia, and Gregory M. Dyer, for plaintiff Bramblewood (McCarter & English attorneys).
Russell L. Hewit, and Daniel R. Lindemann, for defendants/counterclaimants/third party plaintiffs C & G Associates, Robert S. Mortenson, Richard J. Grizzetti, John A. Boiko, Dennis M. Gaito, Kenneth M. Goldmann, & Angelo J. Coppolino (Dughi & Hewit attorneys).
Anthony Malanga, Jr., for third party defendants Bramblewood Associates Ltd., Poff Construction Inc., and PCI Management Inc. (Gaccione, Pomaco & Beck attorneys).
ALLEY, J.S.C.
Plaintiff Bramblewood Investors, Ltd. ("Bramblewood") seeks summary judgment for $67,358.82 as the amount allegedly due and owing on three promissory notes executed by defendant C & G Associates. At relevant times, the individual defendants were partners in C & G. On or about April 17, 1985, Bramblewood offered limited partnership interests pursuant to a Confidential Private Offering Memorandum (sometimes abbreviated as "Memorandum") to raise money for the construction and operation of an apartment complex in High Point, North Carolina. On May 22, 1985, C & G, a New Jersey general partnership, acquired three limited partnership interests in Bramblewood, executing the promissory notes which are the subject of plaintiff's complaint. C & G allegedly defaulted on the notes in May 1989.
*100 The defendants filed a counterclaim and third party complaint against Bramblewood and others alleging misrepresentation and breach of duty. They further claim that Bramblewood failed to register the offering of limited partnership interests as allegedly required by the New Jersey Bureau of Securities. Defendants also submit that they have the right to rescind the transaction because United Capital Securities Inc. (an affiliate of United Capital Investment Inc., the general partner of Bramblewood) did not register as an "agent" under the New Jersey Uniform Securities Law.
For the reasons that follow, plaintiff's motion for summary judgment is granted in all respects, dismissing defendants' affirmative defenses and counterclaims. The summary judgment motion of the third party defendants involves essentially the same issues and is granted for the same reasons. Defendants' motion for summary judgment is denied in all respects.

I. Defendants' counterclaim is barred by the statute of limitations.

Any claim that Bramblewood was required to register the offering of limited partnership interests under N.J.S.A. 49:3-60(b) is time-barred by N.J.S.A. 49:3-71(e).[1] Under the "discovery rule", the time to file suit is triggered when the plaintiff "learns, or reasonably should learn, the existence of a state of facts that may equate in law with a cause of action." Vispisiano v. Ashland Chem. Co. 107 N.J. 416, 426, 527 A.2d 66 (1987). (citations omitted). The purpose of the rule is to "... avoid harsh results that otherwise would flow from mechanical application of a statute of limitations." Id.
N.J.S.A. 49:3-71(e), as amended in 1986, provides in pertinent part that:
*101 "No person may sue under this section more than two years after the contract of sale, or within two years of the time when the person aggrieved knew or should have known of the existence of his cause of action, whichever is later."
Defendants here knew as early as the Spring of 1985 that the Bramblewood offering was not registered with federal or state securities authorities. The cover page of the Confidential Private Offering Memorandum states:
The offer and sale of limited partnership interests covered by this confidential private offering memorandum have not been registered with the Securities and Exchange Commission under the Securities Act of 1933, as amended ... or the securities authorities of other states, pursuant to the securities laws of other states, pursuant to the securities laws of ... such other states, in reliance upon certain exemptions from registration under such laws.
Under the "Investment and Inducement" letter signed by Angelo Coppolino, a partner of C & G, "[t]he undersigned acknowledges being informed by the Issuer that the securities being purchased... are unregistered." Mr. Coppolino's execution of those documents in the partnership name binds C & G and its partners (N.J.S.A. 42:1-9, "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership ..."). Moreover, C & G's partners explicitly authorized Mr. Coppolino to act as representative and signator on behalf of the partnership. Significantly, Mr. Coppolino admits that he read and signed the Investment and Inducement letter. Coppolino dep., T92:9-24.
From the record presented, the court finds that no genuine issue of fact exists on the question whether defendants knew (or should have known) that the limited partnership offerings were unregistered. It is indisputable that they were aware of a "... state of facts which may equate in law with a cause of action" when the Memorandum was reviewed and the Investment and Inducement letter was signed by Mr. Coppolino in 1985. Vispisiano, 107 N.J. at 426, 527 A.2d 66. Applying *102 N.J.S.A. 49:3-71(e), the statute of limitations ran in 1987, because defendants knew or should have known of the existence of a cause of action, if any, when the relevant documents were reviewed and signed in 1985. Two years after defendants had the knowledge necessary to equate in law with a state of facts upon which a cause of action could be based, they still had not asserted their claims, which are thus time-barred.
Defendants' reliance on Petruzzi v. Kobrin, 241 N.J. Super. 439, 575 A.2d 80 (Law Div. 1989), is mistaken. In Petruzzi, plaintiff filed a securities fraud action on February 9, 1987, based on a transaction that occurred on or before July 30, 1984. Defendant moved to dismiss certain claims as barred by the two-year statute of limitations of N.J.S.A. 49:3-71(e) prior to its amendment. The transactions took place prior to the effective date of the discovery rule and the complaint was filed over two and one-half years after the transaction. The court, however, stated, "This amendment occurred before plaintiff's time to file under the original time period had run," and that "the timeliness of this filing is measured as of when a cause of action became known or should have become known to plaintiff." Id. at 442, 575 A.2d 80. Accepting, arguendo, the reasoning of Petruzzi as binding here, defendants have still failed to show that their claims are saved by the discovery rule. The discovery rule, under N.J.S.A. 49:3-71(e), became effective April 9, 1986. Even if the court were to apply the discovery rule as of April 9, 1986, defendants still did not assert a claim until October 4, 1990, or well after the two-years allowed by the statute had expired. And if the timeliness of a filing is measured from the date a cause of action became known (as Petruzzi suggests), defendants nevertheless are unable to establish the basic premise on which the discovery rule is grounded,  their unawareness of a state of facts upon which to state a cause of action. Defendants claim the existence of facts that could have been equated in law with a cause of action. They failed to do so, and thus any claim they assert for violation of the state securities laws is barred by N.J.S.A. 49:3-71(e) for *103 failure to file suit within the applicable two-year statute of limitations and any discovery rule which may apply thereto.

II. Even if defendants' counterclaim was not in all respects barred by the statute of limitations, defendants' claims and defenses based on alleged violations of the Uniform Securities Law are without merit.

In 1985, when the Bramblewood offering was made, N.J.S.A. 49:3-60(b) provided that an offering or sale of securities need not be registered with the Bureau of Securities if:
the security or transaction is not subject to, or is exempted from, the registration requirements of the Securities Act of 1933 and the rules and regulations thereunder; other than by reason of section 3(a) of such act and the rules and regulations under said section 3(a).
It is beyond legitimate dispute that the Bramblewood offering was exempt from the registration requirements of the 1933 Act by reason of Sections 3(b) and 4(2).
The offering was made in accordance with Rules 505 and 506 of Regulation D, 17 C.F.R. § 230.501 et. seq. Rule 505 requires that the aggregate offering price of the offering not exceed $5,000,000.00. 17 C.F.R. § 230.505(b)(2)(i). The cover page of the Memorandum plainly states that the Bramblewood Offering consisted of 45 interests priced at $52,000.00 each, for an aggregate price of $2,340,000.00. The rule further requires that the issuers reasonably believe that there are not more than 35 purchasers of the securities. 17 C.F.R. § 230.505(b)(2)(ii).
In calculating the number of purchasers, "accredited" investors are not included. 17 C.F.R. § 230.501(e)(1)(iv). Plaintiff, in its "Notice of Sales of Securities pursuant to Regulation D or Section 4(b)" (filed with the SEC), indicates that 11 of the investors were "accredited" and the remaining 29 were "un-accredited," making the total number of investors for the purposes of § 230.505(b)(2)(ii) well under 35. Thus, plaintiff complied with the requirements of Rule 505.
Plaintiff's offering was also exempt under Rule 506, 17 C.F.R. § 230.506. That provision places no ceiling on the *104 aggregate offering price, but limits the number of purchasers to 35 and requires that the issuer reasonably believe immediately prior to making any sale that "each purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment." 17 C.F.R. § 230.506(b)(2)(ii). The proof shows that plaintiff made this determination with respect to each unaccredited investor who invested in Bramblewood. Defendant has offered no contradictory proof sufficient to create any fact issue.
Under § 230.502(b), certain information, which under 17 C.F.R. § 230.501 through 503 should be furnished to unaccredited investors prior to sale, must be supplied to all Bramblewood investors. Under § 230.502(c), the issuer may not offer or sell its securities through any form of general solicitation or advertising. The uncontradicted proofs established that plaintiff complied with this requirement.
Plaintiff met the requirements of both rules 505 and 506 at the time of the offering and was exempted from federal registration requirements. Since Bramblewood qualified for exemption under federal law, it was also exempted by N.J.S.A. 49:3-60(b) from the registration requirements of the New Jersey Uniform Securities Law.
Defendants' attempt to find technical deviations from the requirements of the applicable Regulation D exemptions in an effort to create a material issue of fact is futile because, even if such a deviation were found to exist, the offering would still be exempt by reason of Section 4(2) of the 1933 Act, which exempts "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). See Preliminary Note 3 to Regulation D, 17 C.F.R. § 230.501 et seq. The facts outlined above and set forth fully in the record entitle plaintiff to this statutory exemption as well. There is absolutely no evidence *105 before the court in this case that this was anything but a private offering.

III. It is irrelevant whether sales were made to New Jersey Investors by "unregistered agents".

Defendants assert they are entitled to rescission and damages pursuant to N.J.S.A. 49:3-71(a)(1) because the Bramblewood offering involved sales to New Jersey investors, who are not parties to this case, through an unregistered agent in alleged violation of N.J.S.A. 49:3-56(a). Even accepting these allegations as true, and even assuming for the moment that they are not time-barred, the facts presented by defendants in support of these allegations are not material because they have no nexus to the defendants' claim.
Defendants argue that a United Capital representative in North Carolina was required to register as an agent under New Jersey law. They claim that a meeting took place in New Jersey at which a prospective investor (a Mr. Anton) and a purported United Capital representative were both present. The United Capital representative allegedly spoke at this meeting, but no selling of the security or offer of sale there was established.[2]
*106 The Uniform Securities Law applicable to agent registration requirements shows that the only activities at all relevant to a determination of the provisions' applicability are those activities engaged in by a person selling or offering to sell securities in the State of New Jersey. N.J.S.A. 49:3-56(a) provides as follows:
It shall be unlawful for any person to act as a broker-dealer, agent or investment advisor in this State unless he is registered under this act; (emphasis added).
Similarly, N.J.S.A. 49:3-51(a) provides:
Sections 5, 8, 9(a) [49:3-56], 13 and 24 of this act apply to persons who sell or offer to sell when (1) an offer to sell is made in this State, or (2) an offer to buy is made or accepted in this State; (emphasis added).
The activities which defendants allege violated New Jersey law occurred in North Carolina, not in New Jersey, and thus did not involve a violation of New Jersey law, contrary to their assertions.[3]

IV. Defendants have admitted there are no facts to support their counterclaims and third party complaint.

Defendants assert without factual support numerous claims, including that plaintiff and the third-party defendants *107 made material misrepresentations in connection with the subject offering; that these parties inflated real estate and rental values to induce C & G's investment; that excessive fees were paid by and between these parties for various services rendered in connection with the offering; and that certain agreements entered into between these parties were not negotiated at "arm's-length". The assertion that these are material facts that preclude summary judgment against defendants is completely without merit, as is shown by defendants' own testimony.
Defendants admitted in depositions, for example, to having no knowledge of any misrepresentations on the part of plaintiff or any third party defendant at the time of the offering.[4] With respect to the other claims in defendants' counterclaim and third-party complaint and the allegations that certain unidentified agreements between entities involved in the offering were not negotiated at "arm's-length," and that excessive fees were paid to entities involved in the offering, defendants also admitted lack of knowledge, and the evidence showed without contradiction that defendants' claims and defenses in this action are groundless.[5]

*108 V. Defendant's other claims and defenses are meritless.

Defendants further assert (1) that the Memorandum falsely states that the offering is registered in New Jersey, and (2) that they were not informed of an alleged "glut" in the relevant North Carolina housing market at the time of their purchase of interests in Bramblewood. Defendants claim that these alleged misrepresentations and omissions entitle them to rescind their purchase of interests in Bramblewood. But as indicated earlier, the evidence indisputedly shows that defendants were aware that the offering was not registered in New Jersey.
Indeed the sixth page of the "Cover Page" in the Offering Memorandum, contains the following statement:

FOR NEW JERSEY RESIDENTS; THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY HAS NOT PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. THE FILING OF THE WITHIN OFFERING WITH THE BUREAU OF SECURITIES DOES NOT CONSTITUTED [SIC] *109 APPROVAL OF THE ISSUE OR THE SALE THEREOF BY THE BUREAU OF SECURITIES OR THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.
There is no genuine factual basis for concluding that the quoted language amounts to an affirmative representation that the offering was registered in New Jersey.[6] As a matter of law, its plain purpose is to notify prospective investors that any filing of the offering with state securities authorities does not constitute approval or endorsement of any kind by those authorities. Indeed, the clause, by its very language, alerts the potential investor to the risks associated with the investment.
There can be no genuine material fact to support the claim that the plaintiff misrepresented that the offering was registered in New Jersey based solely on the language just quoted, in light of the overwhelming number of disclosures in the Offering Memorandum itself, as well as other documents which the defendants reviewed prior to purchase, that the offering was not registered in any state. The cover page of the Memorandum explicitly states in capital letters that:
THE OFFER AND SALE OF LIMITED PARTNERSHIP INTERESTS COVERED BY THIS CONFIDENTIAL PRIVATE OFFERING MEMORANDUM HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED ... OR THE SECURITIES AUTHORITIES OF OTHER STATES, PURSUANT TO THE SECURITIES LAWS OF ... SUCH OTHER STATES, IN RELIANCE UPON CERTAIN EXEMPTIONS FROM REGISTRATION UNDER SUCH LAWS.
(emphasis added).
Page 4 of the Cover page states that:

*110 BECAUSE THESE SECURITIES ARE BELIEVED EXEMPT FROM REGISTRATION UNDER FEDERAL LAWS AND STATE LAWS, THEY HAVE NOT BEEN REGISTERED WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION OR ANY STATE COMMISSION AND HAVE NOT BEEN APPROVED OR DISAPPROVED BY ANY SUCH COMMISSION.
(emphasis added).
The Memorandum explained that "the Partnership is offering the Interests in reliance upon certain exemptions from registration and qualification requirements of federal and state securities laws." (Id. at page 1-1). Page 15-2 of the Memorandum recites that:
As to the distribution of these partnership interests, each investor must understand and acknowledge the following: (i) that the interests being offered hereby are not being registered under any federal or state securities law by virtue of applicable registration exemptions ...
The Investment and Inducement Letter given to each investor shows that "[t]he undersigned acknowledges being informed by the Issuer that the securities being purchased ... are unregistered." (pgs. 3-7, 1st ¶ 3.)
Finally, the Purchaser Questionnaire given to each investor states that "the Interest(s) will not be registered under the [1933] Act or under any such state securities laws." (pg. E-16, 1st ¶ .)
These uncontradicted disclosures preclude as a matter of law defendants' assertion that the plaintiff misrepresented the fact of registration. Moreover, under the civil liabilities section of the New Jersey Uniform Securities Law, relied upon by defendants in this action, the defendants must prove that the plaintiff intended to deceive the defendants by its inclusion of the subject provision. See N.J.S.A. 49:3-71(a). Defendants have offered no proof concerning fraudulent intent of plaintiff in including the subject language in the Memorandum. (Defendants do not explain why, if plaintiff intended to deceive New Jersey investors into believing that the offering was registered, it included so many disclosures to the contrary.)
The defendants did not, moreover, rely upon any representation that the offering was registered when making their *111 investment decision, and they have affirmatively admitted that they knew the security was unregistered. Defendant Angelo Coppolino, C & G's authorized representative for purposes of the Bramblewood purchase, acknowledges being informed at the time of purchase that the securities were unregistered. Coppolino dep. 12/17/91, T92:9-24. There is no fact issue to the contrary.[7]

*112 VI. Summary:

Based on the facts and reasons set forth above, plaintiff's motion for summary judgment, and the motion for summary judgment by third party defendants, are granted in all respects. Defendant's cross-motion for summary judgment is denied in all respects.
NOTES
[1] The court need not determine, for the purposes of this motion, whether to apply the current version of N.J.S.A. 49:3-71(e) or the version in existence prior to 1986. The court will apply the discovery rule (as defendant submits must be done).
[2] Defendants refer in some detail to a trip to North Carolina by two non-party investors (Messrs. Anton and McCarthy) to view the Bramblewood property and to meet with this United Capital representative. A "sales pitch" allegedly was utilized by this individual in North Carolina, and defendants state that the three New Jersey investors' investment decisions were not made until after the "full pitch." The witnesses indicate that this North Carolina meeting and the information it yielded caused the three investors to invest. Mr. McCarthy stated that as a result of the discussion with the United Capital representative in North Carolina, three New Jersey investors were made more informed and confident about the investment. Messrs. Anton, Madalone, and McCarthy decided to purchase interests in Bramblewood as a result of this visit to North Carolina. Mr. Anton, after the short meeting with a United Capital representative in New Jersey, was uncertain whether to invest in Bramblewood because he was not satisfied with the information he had received about the investment. Only after meeting with the representative in North Carolina, visiting the subject property, and meeting an on-site manager did he decide to invest in Bramblewood.
[3] It is also dispositive that none of defendants' assertions about the United Capital representative's alleged activities with the other investors has anything whatsoever to do with sales to defendants. Defendants assert that liability attaches by operation of law to sales of securities transacted in violation of the state securities law, citing Cola v. Terzano, 129 N.J. Super. 47, 57, 322 A.2d 195 (Law Div. 1974), and that a single sale by an unregistered agent constitutes a violation of the statutes requiring registration of participants. See Carrousel North, Inc. v. Chelsea Moore Co., 9 Ohio App.3d 344, 460 N.E.2d 316 (1983). But if defendants' assertions were factual, and anyone were thereby entitled to rescission, the plaintiffs would be Anton and McCarthy, not the defendants in this case. Defendants lack standing to assert this claim because the governing statute, N.J.S.A. 49:3-71(a)(2), makes the seller liable "to the person buying the security from him." Plainly and simply, defendants cannot assert this wrong allegedly done to another. They have no claim under the statute for sales by an unregistered broker because they did not purchase from one.
[4] The court outlined this testimony in detail in its original opinion filed June 26, 1992, but these facts can be summarized as follows in this abbreviated and revised version of that opinion, rather than being set forth at length.
[5] Furthermore, the evidence showed that all relevant information concerning defendants' claims was fully disclosed to defendants in the offering Memorandum which they received prior to purchasing interests in Bramblewood. For example, the fees which the United Capital entities were to receive for services rendered in connection with the offering were set forth in the Memorandum. In addition, the document plainly discloses that certain agreements and fees negotiated by the entities involved in the offering would not be negotiated at arm's length. Significantly, any claim by defendants that they were in some way "duped" into investing in Bramblewood is in stark contrast to their own participation in the Memorandum's preparation. The partners of C & G Associates, defendants herein, are also partners in the accounting firm that prepared the report of financial forecasts for Bramblewood which forms part of the Memorandum. In preparing this report, defendants evaluated the reasonableness of Bramblewood's financial forecasts with respect to the investment and concluded that these forecasts were reasonable, and after reviewing the reasonableness of Bramblewood's forecasts in connection with their accounting engagement, the defendants concluded that Bramblewood was a "sound investment". It is indisputable that, as accountants retained by Bramblewood to perform this function, defendants were privy to more information about the investment than the typical investor. Their decision to invest in Bramblewood was based on the knowledge they acquired in their capacity as accountants retained by Bramblewood as well as upon their own review of the offering Memorandum in their capacity as private investors, and in fact, the evidence made plain that defendants' accounting firm had worked with United Capital on several other private offerings prior to its engagement on the Bramblewood deal. The extent of defendants' knowledge with respect to Bramblewood and the United Capital entities is demonstrated by the following testimony of Mr. Coppolino:

Q. Was any one particular partner of C & G charged with doing due diligence on Bramblewood or were all of you, basically, looking into it?
A. We relied on Dick Grizzetti because he had all the information on Bramblewood. He had been involved in a few other deals that the promoter or the broker/dealer was responsible for. So he was familiar with the scenario as far as the real estate investment, how it was formed, the two-tier partnership, all the inner workings of how these deals came to be.
Coppolino dep. 12/17/91, T30:14-24.
[6] Bramblewood and the other parties who have filed these motions against defendants are also entitled to summary judgment with respect to C & G's claims under N.J.S.A. 56:8-2, because the Consumer Fraud Act does not apply to the sale of securities. See Stella v. Dean Witter Associates, 241 N.J. Super. 55, 75, 574 A.2d 468 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990) (Consumer Fraud Act was not intended to create a cause of action for fraud in connection with the sale of securities.)
[7] Defendants also claimed that plaintiff omitted material facts in not disclosing that there was an alleged "glut" or oversupply of apartment units in the North Carolina market. But they are faced with their complete failure to prove that there was, in fact, any materiality to such a statement. Plaintiff contends that defendants have offered no competent evidence to prove that the alleged "glut" actually existed. Without that proof, there could not have been any misrepresentation. (Interestingly, the same person  not one of the parties to this action  to whom the "glut" statement allegedly was made, actually purchased his interest. That would be surprising, to say the least, if the "glut" statement had been made, was true, and was believed by the non-party to be true.)

Undisputed evidence showed the lack of materiality of this statement, even assuming that there was a scintilla of evidence that a "glut" existed in the relevant market area. First, the prospective investor to whom the statement was made bought his interest anyway. The "glut" statement, moreover, did not occur until after defendants had already agreed to purchase their interests. In addition, these factors, combined with the inside knowledge of defendants, and the other evidence on the motion, establish beyond dispute that defendants did not genuinely rely on any alleged misstatements. The evidence on these issues was examined at length in the court's original opinion and will not be repeated at length here. It will suffice to say that the abundance of disclosures in the Offering Memorandum, combined with the admissions in defendants own testimony by which they are bound, show as a matter of law the lack of reliance on the alleged misstatements, and show that the defendants were fully aware of the risks associated with this investment. No competent evidence has been proffered to overcome these compelling facts and show either reliance, or the materiality of any purported "glut" of apartment units in the North Carolina market was hidden from the defendants, even assuming defendants had established a scintilla of evidence as to a "glut". Proof of materiality, of reliance, and thus of fraud, are absent as a matter of law. (Of course, even the persons on whom defendants rely so heavily do not raise a genuine fact issue that there was actually a "glut" in the market in North Carolina at the time of the Bramblewood offering. The opponent of a motion for summary judgment "... must set forth specific facts showing there is a genuine issue for trial." R. 4:46-5(a). Defendants have failed to do so and, moreover, are bound by their witness's admission that he was not told there was a "glut". The mere allegation that one unidentified individual may have made some statements which may amount to a misrepresentation, unsupported by any other evidence, and which in any event was not material, is insufficient to preclude the granting of summary judgment at this juncture.