Geoffrey BENSON, Plaintiff,

v.

Greg O'BRIEN, et al., Defendants.

No. 1:97–CV–2786.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 13, 1999.

Geoffrey Benson, Painesville, OH, pro se.

Michael P. Brown, Office of the Prosecuting Attorney, Dale Kondas, Painesville, Elizabeth A. McCord, G. Todd Hoffpauir, Montgomery, Rennie & Jonson, Cincinnati, Abraham Cantor, Concord, George D. Jonson, Montgomery, Rennie & Jonson, Cincinnati, Stephen H. Johnson, Office of the Attorney General, Business & Government, Columbus, Kent M. Shimeall, Office of the Attorney General, Chief Counsel's Staff, Columbus, OH, for defendants.

## OPINION AND ORDER

GWIN, District Judge.

■ On August 13, 1999 and August 25, 1999, defendants filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules.[1] [Docs. 1573, 1577, 1585, and 1586]. In their motions, the defendants maintain that Plaintiff Geoffrey Benson's complaint should be dismissed based on grounds of Eleventh

Amendment immunity, judicial immunity, prosecutorial immunity, and failure to state a claim.[2] Because the Court agrees that all defendants are immune from suit, it grants defendants' motion. Because the immunity doctrine resolves this case, the Court does not address the argument of failure to state a claim.

## I. Background

Defendants are judges, two county prosecutors, an Ohio assistant attorney general, the Ohio Commissioner of Securities, a staff attorney of the Ohio Division of Securities, and a securities specialist with the Division of Securities. The Defendants were involved in issuing and executing search warrants against Plaintiff Benson. The plaintiff alleges these warrants were defective and that defendants seized property from the plaintiff knowing the warrants to be defective. The plaintiff contends he is therefore entitled to relief under 42 U.S.C. §§ 1983 and 1985 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.[3]

■ Plaintiff Benson was associated with The Infinity Group Company ("Infinity"), a putative investment firm that at least one federal court has found operated as a "Ponzi" scheme.[4] In 1997, the Ohio Division of Securities began an investigation of Infinity and the Plaintiff for unlaw-

---

1. On August 13, 1999, Defendants Peaks, Jackson, Coulson, Kowall, Joyce, and O'Brien filed their motion. [Doc. 1577]. On that day, Defendant Affeldt filed a separate motion. [Doc. 1573]. On August 25, 1999, Defendants Inderlied, Henry, and Albert filed their motion. [Doc. 1585]. Also on that day, Defendants Geyer, Fornshell, and Melito filed their motion. [Doc. 1586].

2. Defendants Geyer, Fornshell, and Melito filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Although the remaining defendants file motions for judgment on the pleadings, the legal standard is essentially the same. In considering such motion, the Court accepts all factual allegations as true and construes the allegations in the complaint in the light

most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court addresses defendants' arguments collectively.

3. Plaintiff Benson also brings a common law fraud claim against the judicial defendants. Because the Court finds judicial defendants immune from all suits against them, the fraud claim is not addressed.

4. In *Securities & Exchange Commission v. Infinity Group Co.,* 993 F.Supp. 324 (E.D.Pa. 1998), the court found that Mr. Benson, a named defendant in that action, and other Infinity representatives defrauded more than 10,000 investors nationwide out of over $26.6 million.

ful sales of unregistered securities in violation of Ohio Revised Code § 1707.44.[5]

On June 9, 1997, the Division issued a subpoena *duces tecum* requiring the production of certain documents. It also notified Infinity it was the subject of investigation.[6] The Division of Securities scheduled the examination for 10:00 am on June 30, 1997, at Infinity's offices. The Division examiner arrived as scheduled, but Plaintiff Benson refused to allow the examination to proceed.

On August 7, 1997, the Division, through Assistant Attorney General Affeldt, sought and obtained a temporary restraining order from the Lake County Court of Common Pleas prohibiting Infinity from conducting business until it complied with the Division's subpoena. Infinity continued doing business despite this prohibition.

On August 14, 1997, the Geauga and Lake County Prosecutors' offices, in conjunction with the Division, sought search warrants to seize Infinity's business records. The defendant judges granted the requested warrants. The warrants contained descriptions of the property to be seized. On August 14, 1997, the Division seized the Infinity's business records and computer equipment.

Plaintiff Benson alleges these search warrants were defective, that all defendants knew the warrants were defective, and that defendants violated his constitu-tional rights by preparing and executing them and subsequently taking his property.

On October 31, 1997, the plaintiff filed this action *pro se*.[7] The plaintiff alleges that the seizure of property violated his rights under the Fourth and Fifth Amendments to the United States Constitution. He seeks remedy for these constitutional violations under 42 U.S.C. §§ 1983 and 1985. Finally, plaintiff alleges defendants engaged in a RICO enterprise to deprive him of his property. Plaintiff Benson seeks damages, declaratory judgment, injunctive relief, and return of all property seized under the warrants.

## II. Legal Standard

■ Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay trial. Fed. R. Civ. 12(c). Such a motion must be supported "by the undisputed facts appearing in all the pleadings, supplemented by any facts of which the court will take judicial notice." *Pension Benefit Guaranty Corp. v. Bank One, N.A.*, 34 F.Supp.2d 608, 609 (S.D.Ohio 1998). All well-pleaded material allegations of the non-moving party's pleadings are taken as true and allegations of the moving party which have been denied are taken as false. *Id.* The court may

---

**5.** Ohio Rev.Code § 1707.44(A) prohibits any individual or entity from selling securities without a salesman's license in accordance with Ohio Rev.Code 1707.16 or a broker-dealer's license under 1707.14. Pursuant Ohio Rev.Code § 1707.99, a violation of Ohio Rev.Code § 1707.44(A) is a felony in the fifth degree. Each transaction constitutes a separate violation. *See Carrousel North, Inc. v. Chelsea Moore Co.*, 9 Ohio App.3d 344, 460 N.E.2d 316 (1983).

**6.** Pursuant to Ohio Rev.Code § 1707.23, the Division of Securities may issue a subpoena *duces tecum* and examine any seller, salesman, or issuer of securities if it appears that such person has engaged in any practice prohibited in Chapter 1707 of the Ohio Revised Code.

**7.** The United States District Court for the Northern District of Ohio originally dismissed plaintiff's claim sua sponte under 28 U.S.C. § 1915(e)(2), which directs courts to "screen" certain complaints and dismiss those that are, *inter alia,* frivolous without granting leave to amend the complaint to correct pleading errors. Plaintiff Benson appealed. On June 15, 1999, the Sixth Circuit Court of Appeals vacated the district court's order. *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir.1999). The Court found application of § 1915(e)(2) improper because Benson had never requested leave to proceed *in forma pauperis.* Therefore, the district judge's sua sponte dismissal without notice or leave to amend was improper. The Sixth Circuit remanded for further proceedings.

grant the motion if, on the facts as to admitted allegations, the moving party is clearly entitled to judgment. *Id.*

The Court now considers the motion with this standard in mind.

### III. Discussion

#### A. Eleventh Amendment Immunity

■ Prosecuting attorney defendants, the Assistant Attorney General of Ohio, and the Division of Securities defendants claim that the Eleventh Amendment bars several of Plaintiff Benson's claims.[8] Because immunity under the Eleventh Amendment restricts judicial power under Article III, the Court lacks jurisdiction to hear cases involving such immunity. *Wilson–Jones v. Caviness*, 99 F.3d 203, 206 (6th Cir.1996). The Court agrees that several of plaintiff's claims are barred by the Eleventh Amendment.

■ Under the Eleventh Amendment, a state, its officials, and its employees may be sued in federal court only when the state has consented to suit. *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Pennhurst State School & Hospital v.*

*Halderman*, 465 U.S. 89, 98–99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This doctrine applies to a lawsuit in which a state's officials or employees are sued for money damages regarding their official actions, because a judgment would be satisfied from the state's treasury and, therefore, it is the state itself that is the real party in interest.[9] *See Doe v. Wigginton*, 21 F.3d 733, 736–37 (6th Cir.1994). Thus, a lawsuit challenging official action taken by state officials or employees and seeking money damages is barred by the Eleventh Amendment. *See O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1994).

■ Because plaintiff challenges the prosecuting attorney defendants, the assistant attorney general of Ohio defendant, and the Division of Securities defendants' actions as employees of the State of Ohio, plaintiff's claims for money damages against him are barred by the Eleventh Amendment.

#### B. Judicial Immunity

The judicial defendants contend that plaintiff's suit is barred by absolute immunity. The Court agrees.

■ Judges are immune from individual liability for the performance of any

---

**8.** The judicial defendants do not assert that the Eleventh Amendment bars plaintiff's suit. They base their motions on judicial immunity grounds, discussed in Part III A.

**9.** Where a lawsuit challenges official action without providing sufficient notice of an intention to assert a personal capacity claim against state officials or employees, it must be presumed that state officials or employees are sued in the official capacity only. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037–38 (6th Cir. 1995). This also applies to a lawsuit brought by a *pro se* litigant. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989).

In his complaint, Plaintiff Benson alleges certain judges acted in their personal capacity, but makes no similar allegation against the prosecutors. Benson makes a general allegation that "[t]his action for constitutional violations ... by a public servent [sic] acting in excess of their [sic] personal personal authori-

ty as an [sic] government agents/officers." The complaint alleges no facts attributable to defendants indicating what acts were beyond their official capacity. The complaint makes only general allegations that parties "knew they were wrong," or "knew the warrant was defective," or "kept silent" about the warrants.

Benson's complaint makes no claim indicating the prosecutor defendants acted in excess of their official capacities. Further, there is no indication of any contact between Benson and any defendants other than in relation to the investigation or that there was any relationship other than that of prosecutor and subject of investigation.

Therefore, the Court finds that the prosecutor defendants are sued in the official capacity only. *Pelfrey*, 43 F.3d at 1038 (explaining absent specific notice, an ambiguous complaint is a complaint against the officers in their official capacities).

"judicial act" unless there is a "clear absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). In order to preserve the integrity of the judicial process, a judicial officer must be free to act on his convictions without concern for personal consequences for himself. *Bradley v. Fisher,* 80 U.S.(13 Wall.) 335, 346, 20 L.Ed. 646 (1871). A claim of judicial immunity can be overcome only when the judge asserts immunity for "nonjudicial" actions and actions taken in the complete absence of jurisdiction. *Id.*

Plaintiff Benson does not challenge the jurisdiction of the judicial defendants to preside over the state court proceedings. Rather, plaintiff contends that the act of knowingly issuing defective warrants gives rise to the claims stated. Therefore, the only matter before this Court is whether issuing these warrants were "judicial acts," and thus a protected action.

 To determine whether an action by a judge is "judicial," the court must examine the nature of the act itself, that is, "whether it is a function normally performed by a judge" in his judicial capacity. *Mireles,* 502 U.S. at 12, 112 S.Ct. 286. The issuance of a warrant falls within the realm of "judicial acts." *Liffiton v. Keuker,* 850 F.2d 73, 76 (2nd Cir.1988). Because issuing a warrant is a function normally performed by a judge, absolute immunity should be granted to the judicial defendants. Further, even if the judges did knowingly issue defective warrants, absolute immunity cannot be overcome by allegations of bad faith or malice because the immunity is from suit, not simply assessment of damages. *Mireles,* 502 U.S. at 11, 112 S.Ct. 286.

Because Plaintiff Benson's suit against the judicial defendants is barred by absolute immunity, the Court grants the defendant judges' motions.

### C. Prosecuting Attorney Defendants

The prosecuting attorney defendants also contend that plaintiff's suit is barred by absolute immunity. The Court agrees the prosecutors are immune from suit.

 Absolute immunity has been extended to prosecutors when they act as an "advocate for the state and [are] intimately associated with the judicial process, and not for administrative or investigative acts antecedent or extraneous to the judicial process." *Ireland v. Tunis,* 113 F.3d 1435, 1445 (6th Cir.1997). Therefore, the Court must determine if the actions taken by the prosecuting attorney defendants are sufficiently connected to the judicial process. The Court finds they are so connected.

 Plaintiff Benson alleges that the prosecuting attorney defendants presented the applications for search warrants to the courts. A prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at such hearing are protected by absolute immunity. *Burns v. Reed,* 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Here, the prosecuting attorney defendants merely presented the warrants to the court for signature. This action is sufficiently associated with the judicial phase of the case, and thus is protected by absolute immunity. *Joseph v. Patterson,* 795 F.2d 549, 555 (6th Cir. 1986) (decision to file a criminal complaint and seek issuance of an arrest warrant covered by absolute immunity).

 Plaintiff Benson alleges the prosecutors acted with malice and had knowledge that the affidavit in support of the warrants was defective. However, prosecutorial immunity applies regardless of any malice or knowledge on the prosecutor's part. *Imbler v. Pachtman,* 424 U.S. 409, 424–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

 State prosecutors are also absolutely immune from liability in § 1983 actions for acts undertaken in preparation for the initiation of judicial proceedings and occurring in the course of the prosecutor's role as an advocate for the state.

*Buckley v. Fitzsimmons,* 509 U.S. 259, 271–76, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The Sixth Circuit has extended this prosecutorial immunity to civil RICO claims. *Cullinan v. Abramson,* 128 F.3d 301, 308 (6th Cir.1997).

Finally, Plaintiff Benson does not appear to allege that the prosecuting attorneys acted as witnesses or that they participated in the search or seizure of Infinity's documents. He also does not allege that the prosecuting attorneys participated in the preparation of the documents supporting the warrant requests. Further, plaintiff acknowledges that these warrants were obtained and served on August 14, 1997, after the case against him had been filed. In light of the allegations in the pleadings, the Court finds no indication that the warrants were obtained outside the judicial process.

Therefore, the Court finds that Plaintiff Benson's suit against the prosecuting attorney defendants is barred by absolute immunity.

### D. Assistant Attorney General Defendant

Defendant Affeldt, the assistant attorney general for the state of Ohio, also contends that plaintiff's suit is barred by absolute immunity. Plaintiff Benson's complaint does not specify what role Affeldt played in the warrant process other than that he "used or created" the defective warrants. Even if Defendant Affeldt was involved in the preparation, issuance, and execution of the defective search warrant, that act is in a prosecutorial capacity and is absolutely immune. *Joseph,* 795 F.2d at 556. Defendant Affeldt is therefore entitled to immunity for the same reasons that the prosecuting attorney defendant attorneys are entitled to absolute immunity.

10. In his response to defendants' motion, which was filed a day late, Plaintiff Benson suggests that this Court promised he would "get a trial by jury." The Court notes that

Therefore, the Court grants the Defendant Affeldt's motion.

### E. Division of Securities Defendants

Division of Securities defendants argue they too are immune from suit because they have a statutorily-granted power of prosecuting attorneys. The Court agrees.

Ohio Revised Code § 1707.23 authorizes the Division of Securities to initiate criminal proceedings in cooperation with local prosecuting attorneys. This authority allows the Division to carry out its statutory mandate to enforce Ohio laws and regulations related to the securities industry. Therefore, the Division is statutorily afforded the same privileges as prosecuting attorneys.

Plaintiff Benson alleges that Defendant Fornshell, staff attorney to Ohio's Division of Securities, drafted the defective warrant. He alleges generally that Security Commissioner Geyer and Security Specialist Melito were involved in taking his property and that they "knew they were doing wrong." However, because their actions in pursuing the warrants are related to their prosecutorial role of the investigation and initiation of criminal proceedings, they are absolutely immune. *Joseph,* 795 F.2d at 556.

Therefore, the Court finds Plaintiff Benson's suit against the Division of Securities defendants is barred by absolute immunity.

### IV. Conclusion

For the reasons above, the Court concludes that Plaintiff Benson's suit is barred by the absolute immunity of the defendants. Defendants are hereby entitled to judgment on the pleadings and dismissal of this action pursuant to Rule 12 of the Federal Rules.[10]

IT IS SO ORDERED.

during the case management conference of August 17, 1999, the Court noted motions that might dispose of the case were pending. The Court did not indicate how it would rule on

## ORDER

The Court has issued its opinion in the above-captioned matter. For the reasons stated therein, the Court grants defendants' motions. Accordingly, this action is terminated pursuant to Rule 58 of the Federal Rules.

IT IS SO ORDERED.

said motions, not did it guarantee Plaintiff Benson would make it to trial. The Court indicated if the case survived these motions, the case would be tried on the date set at the case management conference.