OPINION
{¶ 1} Appellant, Wallace C. Adamson, M.D. (hereinafter "appellant"), appeals from the August 11, 2003, decision and entry of the Franklin County Court of Common Pleas affirming the December 11, 2002, order of appellee, Ohio State Medical Board (hereinafter "Board" or "appellee"), permanently revoking appellant's license to practice medicine. For the reasons which follow, we affirm the judgment of the trial court.
 {¶ 2} A physician assistant (hereinafter "PA") is a dependent practitioner; he or she may not practice medicine. The role of a PA is to assist a physician as he or she practices medicine. A PA is to perform services in accordance with a PA utilization plan. A supervising physician may not authorize a PA to perform services which are not in accord with the plan. Moreover, a supervising physician may not allow a PA to perform services which are prohibited by statute.
 {¶ 3} Appellant employed Robin Hawn,[1] a PA, in his medical practice. Hawn was to perform services in accordance with two PA utilization plans (hereinafter collectively "Plans") which appellee approved by poll vote on January 6, 1997.
 {¶ 4} On May 9, 2001, the Board notified appellant of its intention to determine whether or not to take disciplinary action against his license based upon allegations he violated certain provisions of R.C. 4731 during a period from 1999 to 2000. Specifically, the Board alleged appellant allowed Hawn to initiate her own treatment plans for established patients with "new conditions," contrary to Ohio law.
 {¶ 5} Evidentiary hearings were held in March, 2002. On October 7, 2002, the Hearing Examiner issued his Report and Recommendation (hereinafter "Report") which proposed appellant's medical license should be permanently revoked.
 {¶ 6} Appellant filed objections to the Report. On December 11, 2002, the Board met to consider the Report and appellant's objections. At the hearing, appellant and Hawn denied they violated the Plans or any Ohio law. Appellant testified none of the treatment Hawn rendered, including prescribing for patients, exceeded her authority as a PA, the terms of the Plans, or under his protocols.
 {¶ 7} The Board argued appellant allowed Hawn to treat patients with new conditions without appellant personally seeing or evaluating the patient prior to treatment. Appellant's records revealed a pattern of his failing to countersign Hawn's orders. Further, appellant allowed Hawn to practice independently when he was out of town. She consistently: (1) saw patients, assessing, and rendering diagnoses of diseases or ailments; (2) prescribed treatment or regimens for patients which had not been previously prescribed or set forth by appellant for that patient; (3) called in prescriptions; and (4) dispensed sample dangerous drugs not ordered by appellant.
 {¶ 8} After consideration of the Report and objections, the Board permanently revoked appellant's license to practice medicine.
 {¶ 9} Additionally, on December 11, 2002, a motion was made to retroactively ratify the decisions approving the applications for licensure, registration, or PA utilization plan approval which were previously approved by the poll vote procedure[2] (hereinafter "motion"). The motion carried. This retroactive ratification affected appellant's medical license and the Plans.
 {¶ 10} On December 27, 2002, appellant appealed the Board's decision to the Franklin County Court of Common Pleas, pursuant to R.C. 119.12. On August 11, 2003, the trial court affirmed in part and reversed in part the decision of the Board.
 {¶ 11} Appellant timely appeals and asserts the following assignments of error:
[1.] The Court of Common Pleas erred when it held that the State Medical Board may validly approve physician assistant utilization plans under Ohio's Sunshine Law as long as the approval is made without deliberation.
[2.] The Court of Common Pleas erred when it held that the State Medical Board may retroactively "cure" its failure to approve the physician assistant plans at issue in accord with Ohio's Sunshine Law.
[3.] The Court of Common Pleas erred when it held that the Board's violation of Ohio's Sunshine Law was moot with respect to Dr. Adamson's case.
[4.] The Court of Common Pleas erred by failing to conclude that the Board's knowing introduction of false evidence and failure to correct that evidence once introduced violated Dr. Adamson's right to due process.
[5.] The Court of Common Pleas erred by permitting the Board to discipline Dr. Adamson based on its December 11, 2002 definition of "new condition" in violation of Dr. Adamson's due process rights.
[6.] The Court of Common Pleas erred when it failed to reverse the State Medical Board for failing to transmit a complete record as required by Ohio Revised Code 119.12.
 {¶ 12} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111.
 {¶ 13} The evidence required by R.C. 119.12 can be defined as follows:
(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, fn. omitted.
 {¶ 14} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" (Emphasis sic.) Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, quoting Andrews v. Bd. of Liquor Control
(1955), 164 Ohio St. 275, 280. Furthermore, even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive. Conrad, supra, at 111.
 {¶ 15} An appellate court's standard of review in an administrative appeal is even more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. In Pons, the Supreme Court of Ohio stated:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id., citing Lorain City School Dist. Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. (Emphasis sic.)
 {¶ 16} Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal.Big Bob's, Inc. v. Ohio Liquor Control Comm.,151 Ohio App.3d 498,2003-Ohio-418, at ¶ 15. Therefore, we must also determine whether the common pleas court's decision is in accordance with law.
 {¶ 17} We begin our analysis with appellant's fourth assignment of error. Appellant argues false evidence was introduced at the administrative hearing or relied upon by the Board in its order. Appellant argues the Board, as of December 11, 2002, knew it failed to approve the Plans in compliance with the Sunshine Law in early 1997, as alleged. Nevertheless, appellant maintains the Board and its counsel, permitted the contrary, and false evidence, to be relied upon to find the Plans had been approved in early 1997.
 {¶ 18} The cases upon which appellant relies do not support the finding the Plans' approvals were false evidence when introduced at appellant's administrative hearing. We are not faced with false testimony given by a witness under oath, Napuev. Illinois (1959), 360 U.S. 264, 79 S.Ct. 1173 (witness testified falsely that he had received no promise of consideration in return for his testimony, and prosecutor, knowing of promised consideration, did not correct testimony);Giglio v. United States (1972), 405 U.S. 150, 92 S.Ct. 763;Beltran v. Cockrell (2002), 294 F.3d 730 (eyewitnesses were allowed to falsely testify that they consistently identified defendant as the gunman); or with prosecutorial misconduct in stating the physical evidence in a case, Miller v. Pate (1967),386 U.S. 1, 87 S.Ct. 785 (prosecutor knowingly advanced the theory the defendant's shorts were stained with blood when he knew at the time it was paint). We do not have before us the situation where the Board engaged in a deception with respect to the approvals. Instead, we are faced with Plans which the Board in good faith approved pursuant to the poll vote process, which was arguably an insufficient procedure to approve the Plans. This does not constitute false evidence in the manner considered by the court faced with due process violations resulting from the introduction of false evidence.
 {¶ 19} Accordingly, appellant's fourth assignment of error is not well-taken and is overruled.
 {¶ 20} Appellant argues in his fifth assignment of error the trial court erred by permitting the Board to discipline him based on its December 11, 2002, definition of "new condition" in violation of his due process rights. Specifically, appellant contends the Board had not adopted a uniform definition of the term "new condition." In its December 11, 2002, order, the Board adopted the definition of "new condition" advanced by its witness, Dr. Gardner. The Board then used Dr. Gardner's definition to find appellant committed a punishable act by permitting his PA to treat patients presenting years before with "new conditions." Appellant asserts the trial court did not address this error.
 {¶ 21} A legislative body need not define every word it uses in an enactment. See Kiefer v. State (1922), 106 Ohio St. 285. Moreover, any term left undefined by statute is to be accorded its common, everyday meaning. As stated in Eastman v. State
(1936), 131 Ohio St. 1, paragraph five of the syllabus, "[w]ords in common use will be construed in their ordinary acceptation and significance, and with the meaning commonly attributed to them." Furthermore, when faced with statutes pertaining to a select group of individuals with specialized knowledge of the regulated subject matter, the focus is whether the statutory language "sufficiently conveys a definite warning as to the proscribed conduct, when measured by common understanding and commercial practice." United States ex rel. Schott v. Tehan (1966),365 F.2d 191, 198.
 {¶ 22} In this matter, the term "new condition" was within the common understanding and commercial practice of appellant. As stated by the Hearing Examiner, "[w]hen read in that [legislative] context, the term `new condition' should hold no mystery for a reasonable practitioner." (Report at 202.) Moreover, Dr. Gardner testified her expert opinion was based upon the fact "new condition" is a "general phrase used in every day language." (Tr. at 240.) As such, appellant's due process rights were not violated by the Board's application of the meaning commonly attributed to "new condition."
 {¶ 23} Accordingly, appellant's fifth assignment of error is not well-taken and is overruled.
 {¶ 24} In his sixth assignment of error appellant maintains the trial court erred when it failed to reverse the Board for failing to transmit a complete record as required by R.C. 119.12. Specifically, appellant argues the motion needed to be transmitted with the record as it is the signal evidence of the validity of appellant's Plans. While the trial court allowed the motion to be entered by stipulation, appellant contends this does not cure the violation. In support, appellant relies uponBergdahl v. Ohio State Bd. of Psychology (1990),70 Ohio App.3d 488.
 {¶ 25} In Bergdahl, the Ohio State Board of Psychology (hereinafter "OSBP") denied her request for admission to the examination for a psychology license. Ms. Bergdahl appealed and, subsequently, filed a motion to submit additional evidence requesting that certified copies of the official minutes of OSBP's meetings be included in the official record. The trial court concluded the minutes of the meeting were essential in determining the merits of the appeal. As such, it ordered them submitted within 30 days. OSBP failed to comply and the trial court granted Ms. Bergdahl's motion to remand In affirming the trial court's decision, the Bergdahl court concurred with the trial court's conclusion the minutes of the meetings were a necessary part of the certified record.
 {¶ 26} Appellant's reliance upon Bergdahl is misplaced. The situation in this matter is not analogous to Bergdahl. The trial court did not order the motion submitted by the Board. The trial court did not opine the motion was a necessary part of the record. It was based upon this reasoning that the Bergdahl
court affirmed the remand Furthermore, the Bergdahl case stands in direct contradiction with appellant's assertion that a violation of R.C. 119.12 cannot be cured. The trial court inBergdahl ordered OSBP to submit the minutes within 30 days. As such, recognizing the need to review the minutes, the trial court gave OSBP the opportunity to cure its failure in submitting the minutes. Thus, Bergdahl actually supports the conclusion that a violation of R.C. 119.12 can be cured. As such, any alleged violation of R.C. 119.12 which occurred due to the failure of the Board to initially transmit the motion was remedied by the trial court allowing the motion entered by stipulation.
 {¶ 27} Accordingly, appellant's sixth assignment of error is not well-taken and is overruled.
 {¶ 28} We now turn to appellant's first, second, and third assignments of error which involve the application of R.C.122.22, the Sunshine Law, to the Board's utilization of the poll vote procedure to approve appellant's Plans and the December 11, 2002 retroactive ratification of the plans.
 {¶ 29} The charges levied against appellant by the Board were premised upon numerous statutory violations. Many of the statutory violations do not require the plans to be validly approved in order for appellant to be found to have violated them. Therefore, as long as there is reliable, probative, and substantial evidence to support these statutory violations, the issue of whether the approval of the Plans by the poll vote process violates the Sunshine Law is irrelevant.
 {¶ 30} Upon consideration, the trial court did not abuse its discretion in affirming the Board's decision. An examination of the evidence in this matter reveals reliable, probative, and substantial evidence to support appellant's violations of the charged statutes, independent of whether the plans were validly approved. See e.g. R.C. 4731.22(B). The evidence established appellant, on numerous occasions, failed to supervise Hawn, allowing her to independently diagnosis patients and prescribe treatments not previously approved by appellant. Additionally, evidence was presented that Hawn repeatedly acted on her own in ordering prescription medication for patients without meaningful review from appellant.
 {¶ 31} As there is reliable, probative, and substantial evidence to support these statutory violations, we decline to examine the issue of whether the poll vote process violated the Sunshine Law and invalidated the Plans' approvals.
 {¶ 32} Accordingly, appellant's first, second, and third assignments of error are moot.
 {¶ 33} Based on the foregoing, appellant's first, second, and third assignments of error are moot and the fourth, fifth, and sixth assignments of error are not well-taken and are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Petree, JJ., concur.
[1] Appellant and Robin Hawn are married. However, for clarity, Robin Hawn will be referred to by her maiden name.
[2] The Board utilized a poll vote procedure to approve the Plans. The poll vote procedure was implemented in 1973 to expedite the approval process of medical licenses and PA utilization plans. The process involved the Board staff sending individual licensure application materials and PA utilization plans to Board members for review. The Board members would review the materials and return their individual vote to the Board staff. The Board members neither met to discuss nor deliberated over the approval of the licenses and/or PA utilization plans. There was no contact between Board members, either in person or by telephone. Upon return by the Board members of a unanimous affirmative poll vote, the Board staff would issue approvals. The approvals of licenses and PA utilization plans which were the result of the poll vote process were not ratified by appellee on the record during an open meeting. Additionally, approval was not reflected in the official minutes.